COLLIERS, DOW AND CONDON, INC. *v.* LEONARD J. SCHWARTZ ET AL.
(AC 22367)

Schaller, West and Hennessy, Js.

---

Argued October 30, 2002—officially released June 17, 2003

*Bruce G. MacDermid*, for the appellant (plaintiff).

*Mark S. Shipman*, with whom, on the brief, was *Steven S. Sosensky*, for the appellees (defendants).

*Opinion*

WEST, J. The plaintiff, Colliers, Dow and Condon, Inc., appeals from the judgment of the trial court rendered in favor of the defendants in this breach of contract action. The plaintiff claims that the court improperly (1) relied on parol evidence to vary an express term of a real estate brokerage agreement and (2) concluded that the plaintiff had failed to prove the defendants' breach of the agreement by a preponder-

ance of the evidence.[1] We agree with the plaintiff and reverse the judgment of the trial court.

The following facts are relevant to our disposition of the plaintiff's appeal. The controversy between the parties arises from the leasing of certain commercial property at 631-635-637 Farmington Avenue in West Hartford and owned by the defendant K.F. Associates, LLP. The defendant Leonard J. Schwartz is a managing partner in K.F. Associates, LLP.[2]

The parties have conducted business with each other on several prior occasions. The plaintiff leased, and subsequently sold, one of Schwartz's buildings located in Bloomfield. The plaintiff later sold a small office building in West Hartford for Schwartz. In 1994, the defendants engaged the plaintiff's services to lease 1450 square feet of the subject property.[3] Following the success of those endeavors, the parties, in 1995, signed an agreement captioned "Exclusive Right To Sell/Exchange Agreement," under which the plaintiff was to secure a buyer for the subject premises.

In 1997, the parties signed an agreement captioned "Exclusive Right to Sell/Exchange/Lease Agreement,"

---

[1] As framed by the plaintiff, the parol evidence claim challenges: (1) the court's conclusion that the parties' contract did not allow the plaintiff to recover a commission in the event that the subject property was leased, and (2) the court's finding that there was no understanding between the parties that the plaintiff would be entitled to a commission for leasing the premises. Because we conclude that the court's reliance on parol evidence was improper, we need not reach the issue of whether the finding derived from that evidence, that there was no meeting of the minds between the parties as to leasing of the subject property, was clearly erroneous.

[2] K.F. Associates, LLP, a limited liability partnership formed on October 22, 1996, is the successor in interest to K.F. Associates, a general partnership formed on January 25, 1983. Schwartz also was the managing partner of the general partnership. Any references to K.F. Associates regarding transactions that occurred prior to October 22, 1996, are to the general partnership, rather than to the limited liability partnership.

[3] That brokerage service was provided pursuant to a contract captioned "Exclusive Right To Lease Agreement."

which is the subject of this appeal. At that time, a company named Imagineers was occupying approximately 86 percent of the subject property as a tenant. Schwartz asked John Tully, a licensed brokerage representative of the plaintiff, to approach Imagineers about buying the property. Tully's discussions with Imagineers culminated in a letter in which he presented two proposed acquisition plans for the property. Imagineers responded with a counteroffer at a price well below either of the plaintiff's proposals. As an alternative, Imagineers proposed to Schwartz directly that it continue to rent the building under a five year lease, with an option to renew for another five years, at $120,000 a year for the first five years and $130,000 a year for the second five year period. Under that arrangement, Imagineers would make certain improvements to the property, and provide landscaping and snow removal. A final counteroffer proposed an initial five year lease at $135,000 with an option for an additional five year lease at $145,000, with the defendants making necessary repairs.

Between March 3 and August 26, 1998, a series of letters were exchanged between Imagineers and Schwartz. On August 26, 1998, Schwartz and Imagineers signed a lease agreement, effective February 1, 1999. On April 19, 1999, the plaintiff sent the defendants a bill for real estate brokerage services rendered pursuant to their exclusive listing agreement. The amount requested was 5 percent of the anticipated rent to be paid during the first five year lease period, or $42,750.80. Schwartz refused to make payment, and this action followed.

I

The plaintiff's first claim is that the court improperly relied on parol evidence to contradict an express term of the parties' contract. We agree.

At the outset, we set forth the applicable standard of review. Ordinarily, "[o]n appeal, the trial court's rulings on the admissibility of evidence are accorded great deference. . . . Rulings on such matters will be disturbed only upon a showing of clear abuse of discretion. . . . Because the parol evidence rule is not an exclusionary rule of evidence, however, but a rule of substantive contract law . . . the defendants' claim involves a question of law to which we afford plenary review." (Citations omitted; internal quotation marks omitted.) *Harold Cohn & Co.* v. *Harco International, LLC*, 72 Conn. App. 43, 48, 804 A.2d 218, cert. denied, 262 Conn. 903, 810 A.2d 269 (2002).

The parol evidence rule is "premised upon the idea that when the parties have deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed, that the whole engagement of the parties, and the extent and manner of their understanding, was reduced to writing. After this, to permit oral testimony, or prior or contemporaneous conversations, or usages [etc.], in order to learn what was intended, or to contradict what is written, would be dangerous and unjust in the extreme. . . .

"The parol evidence rule does not of itself, therefore, forbid the presentation of parol evidence, that is, evidence outside the four corners of the contract concerning matters covered by an integrated contract, but forbids only the use of such evidence to vary or contradict the terms of such a contract. Parol evidence offered solely to vary or contradict the written terms of an integrated contract is, therefore, legally irrelevant. When offered for that purpose, it is inadmissible not because it is parol evidence, but because it is irrelevant. By implication, such evidence may still be admissible if relevant . . . to show mistake or fraud. . . . [This]

recognized [exception is], of course, only [an example] of [a situation] where the evidence . . . tends to show that the contract should be defeated or altered on the equitable ground that relief can be had against any deed or contract in writing founded in mistake or fraud." (Citations omitted; internal quotation marks omitted.) *Heyman Associates No. 1* v. *Ins. Co. of Pennsylvania*, 231 Conn. 756, 780–81, 653 A.2d 122 (1995).

As an initial matter, we must frame the issue before this court. The plaintiff contends that the trial court relied on parol evidence to vary an express term of a contract, specifically, to read the word "lease" out of an otherwise valid contract. The defendants argue that the court relied on the parol evidence to make a preliminary finding that because there was no meeting of the minds between the parties as to the leasing of the subject property, there was no contract at all. We agree with the plaintiff.

Because the defendants conceded in their answer to the complaint that Schwartz had entered into a contract with the plaintiff for professional real estate brokerage services, the validity of the contract was not before the court; only the scope of that contract was at issue. Moreover, the court's memorandum of decision does not state that there was no agreement. The court found only that there was no agreement as to leasing, implicitly leaving intact that portion of the agreement relating to efforts to sell the property. The legal consequence of the court's finding, therefore, was to strike that portion of the contract relating to leasing. We analyze the claims raised in this appeal in that light.

The defendants contend that the renewal of the parties' agreement was solely for the purpose of securing a buyer for the property and was not intended to include any efforts to lease the premises. Schwartz testified in support of that proposition. He stated that upon receiv-

ing the agreement, he called Tully and asked if the agreement meant that he was going to sell the building, if, in effect, the agreement was essentially the same as the earlier "right to sell/exchange" agreement. According to Schwartz, Tully responded, "Yes, it's only for selling the building." On the basis of that parol evidence, the court found that there was no meeting of the minds that the plaintiff would be entitled to a commission for leasing the premises. Specifically, the court found that in entering into the agreement, the defendants had not intended to retain the services of the plaintiff to lease the subject property, but had intended to retain the plaintiff's services solely for the purpose of selling that property.[4]

That finding, however, directly contradicts the express terms of the contract. The parties' written agreement provides that a commission is to be paid to the plaintiff upon either the sale or lease of the premises. Paragraph five of that agreement states in relevant part: "Broker earns its commission . . . if during the term of this Agreement: (a) a prospective buyer or lessee is ready, willing and able to PURCHASE or EXCHANGE or LEASE the Property at the price shown in paragraph

---

[4] In looking to the circumstances surrounding the making of the agreement, the court relied on *Lar-Rob Bus Corp.* v. *Fairfield,* 170 Conn. 397, 407–408, 365 A.2d 1086 (1976). *Lar-Rob Bus Corp.* did not involve a situation in which the trial court relied on parol evidence to contradict the express terms of a written contract. Rather, the court relied on such evidence only to resolve an ambiguity in the contract's language. That case involved a contract for the provision of school bus services under which the defendant agreed to compensate the plaintiff for extra route mileage at the rate of $1 for each additional mile by which any route exceeded forty miles in length. Id., 405–406. The contract, however, failed to establish whether the "connecting miles" necessarily traveled "between the school to which children are last delivered in the morning and the school where children are first picked up in the morning" should be included in the calculation of route mileage for the purpose of determining extra compensation for routes exceeding forty miles. Id., 406. The court looked to the conduct of the parties in construing the intended meaning of the term "route" within the contract.

4 above, or at any other price or terms acceptable to Owner; or (b) any contract for the SALE or TRANSFER or LEASE of the Property or any portion thereof or interest therein is entered into by Owner; or (c) Owner and a prospective buyer or tenant enter into a legally binding contract for the SALE or EXCHANGE or LEASE of the Property or any portion thereof or any interest therein and such contract is breached or rescinded by a party or the parties; or (d) Owner SELLS, LEASES or TRANSFERS the Property or any portion thereof or interest therein . . . ." Paragraph four states: "Owner authorizes Broker to quote a SALE/EXCHANGE price of: $500,000, and a lease rental price of $13.50 gross per square foot, per annum."

Given the substance of the parol evidence admitted in the present case, it might be supposed that Schwartz was attempting to establish that the lease term contained in the agreement was the result of either mistake or misrepresentation. We refer specifically to Schwartz's testimony that he asked Tully whether the 1997 contract was the same as the 1995 sale-exchange agreement. Schwartz testified that Tully replied that it was essentially the same and that it contemplated only the sale of the subject property.

As stated previously, parol evidence may be introduced to show fraud in the inducement or a mistake in memorializing the terms of an agreement. Where fraudulent misrepresentation is alleged, parol evidence may be introduced to show that the legal effect of a term was misrepresented and that such misrepresentation was relied on by a party in signing the agreement. See id. The pleadings filed in the present case, however, preclude any such application of the parol evidence rule. The only special defense that the defendants raised was the assertion that the contract failed to comply

with the provisions of General Statutes § 20-325a (b).[5] The defendants did not raise any issue with respect to mistake or fraud.[6] Even if we were to conclude that Schwartz's testimony at trial was aimed at establishing fraud or misrepresentation by the plaintiff respecting the terms of the agreement, we could not conclude that the court was entitled to entertain such testimony. Fraud is an affirmative defense that, to be availed of, must specifically be pleaded. See Practice Book § 10-50;[7] *Travelers*

---

[5] General Statutes § 20-325a (b) provides in relevant part: "No person, licensed under the provisions of this chapter, shall commence or bring any action with respect to any acts done or services rendered after October 1, 1995, as set forth in subsection (a), unless the acts or services were rendered pursuant to a contract or authorization from the person for whom the acts were done or services rendered. To satisfy the requirements of this subsection any contract or authorization shall: (1) Be in writing, (2) contain the names and addresses of the real estate broker performing the services and the name of the person or persons for whom the acts were done or services rendered . . . and (7) be signed by the person or persons for whom the acts were done or services rendered or by an agent authorized to act on behalf of such person or persons, pursuant to a written document executed in the manner provided for conveyances in section 47-5 . . . ."

We note that the defendants' answer cited General Statutes § 20-325b, rather than § 20-325a (b). General Statutes § 20-325b provides: "Each written agreement which fixes the compensation to be paid to a real estate broker for the sale, lease or purchase of real property shall contain the following statement in not less than ten point boldface type or in a manner which otherwise stands out significantly from the text immediately preceding any provision of such agreement relating to compensation of the broker:

" 'NOTICE: THE AMOUNT OR RATE OF REAL ESTATE BROKER COMPENSATION IS NOT FIXED BY LAW. IT IS SET BY EACH BROKER INDIVIDUALLY AND MAY BE NEGOTIABLE BETWEEN YOU AND THE BROKER.' "

Nevertheless, the defendants' brief and testimony make it clear that its defense was based on § 20-325a (b) rather than on § 20-325b.

[6] Although the defendants pleaded a counterclaim against the plaintiff, alleging a violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq., the court found that the defendants had failed to brief that claim and deemed it to be abandoned.

[7] Practice Book § 10-50 provides in relevant part: "No facts may be proved under either a general or special denial except such as show that the plaintiff's statements of fact are untrue. Facts which are consistent with such statements but show, notwithstanding, that the plaintiff has no cause of action, must be specially alleged. Thus . . . fraud . . . must be specially pleaded . . . ."

*Ins. Co.* v. *Namerow,* 257 Conn. 812, 825, 778 A.2d 168 (2001); *Connecticut National Bank* v. *Voog,* 233 Conn. 352, 367, 659 A.2d 172 (1995). Because it was not pleaded, the defendants are not entitled to a judgment premised on that defense even if the evidence supports a finding of fraud. See *Thomas* v. *Ferriss,* 113 Conn. 539, 545, 155 A. 829 (1931); *DeLucia* v. *Valente,* 83 Conn. 107, 109, 75 A. 150 (1910) ("fact that the court heard evidence upon the question of fraud, considered it, and made a finding in relation to this subject, did not give the appellant the right to rely upon the special defense which had not been pleaded").

We conclude, therefore, that the court's reliance on parol evidence to contradict an express term of the parties' contract was improper. Accordingly, we reverse the court's judgment that the brokerage agreement did not cover the leasing of the property.

## II

The plaintiff also claims that the court improperly found that the plaintiff failed to prove the defendants' breach of the contract by a preponderance of the evidence. We agree.

"Whether there was a breach of contract is ordinarily a question of fact. . . . We review the court's findings of fact under the clearly erroneous standard." (Citations omitted; internal quotation marks omitted.) *Ridgefield* v. *Eppoliti Realty Co.,* 71 Conn. App. 321, 338–39, 801 A.2d 902, cert. denied, 261 Conn. 933, 806 A.2d 1070 (2002). "The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left

with the definite and firm conviction that a mistake has been committed . . . ." (Internal quotation marks omitted.) *Putnam Park Associates* v. *Fahnestock & Co.*, 73 Conn. App. 1, 11–12, 807 A.2d 991 (2002).

To the extent that the court's conclusion that the plaintiff failed to prove its breach of contract claim was based on the court's antecedent finding that the contract did not contemplate retaining the plaintiff's services to lease the subject property, we refer to part I of this opinion, in which we reversed that finding. We note that the court never ruled on whether the evidence supported a breach of a contract to lease the property. Notwithstanding that fact, we will, in the interests of judicial economy, review the evidence and analyze the plaintiff's breach of contract claim in light of the clear and unambiguous language of the contract. See *Skuzinski* v. *Bouchard Fuels, Inc.*, 240 Conn. 694, 703, 694 A.2d 788 (1997); *Emonds* v. *Lumberman's Mutual Casualty Co.*, 49 Conn. App. 374, 377 n.2, 714 A.2d 699 (1998).

The parties' contract states in relevant part: "Broker earns its commission . . . if during the term of this Agreement . . . (b) any contract for the SALE or TRANSFER or LEASE of the Property or any portion thereof or interest therein is entered into by Owner . . . ." In their answer to the complaint, the defendants admitted that during August, 1998, "K.F. and certain tenants entered into 'Lease Agreements' whereunder K.F. agreed to lease the Property to said tenants which, in turn, agreed to pay rent for the Property." The defendants also admitted that they had refused to pay the plaintiff any commissions in connection with that lease agreement.

The defendants argue that it would be inequitable to award a commission to the plaintiff for securing the renewal of the lease by the current occupants because such renewal was not the product of substantial effort

by the plaintiff. We need not determine, however, whether negotiating that lease renewal required extensive effort by the plaintiff. All that we may consider is whether such an action was within the scope of the parties' agreement. We do not unmake bargains unwisely made. *Detar* v. *Coast Venture XXVX, Inc.*, 74 Conn. App. 319, 323, 811 A.2d 273 (2002) (" 'Absent other infirmities, bargains moved on calculated considerations, and whether provident or improvident, are entitled nevertheless to sanctions of the law. . . . Although parties might prefer to have the court decide the plain effect of their contract contrary to the agreement, it is not within its power to make a new and different agreement . . . .' ").

It is true that the renewal of the lease did not require the plaintiff to search for or to solicit a new party to occupy the premises. Because the tenant already was occupying the premises, all that was required was to negotiate the terms of the renewal. The defendants argue implicitly that they would not have contracted with the plaintiff to provide a 5 percent commission for what they characterize as de minimus activity. The record available to us for review confirms that although the plaintiff conducted negotiations with Imagineers for a proposed sale of the property, none of the communications between Imagineers and the plaintiff related to renewing the lease. Indeed, the only communications involving the possibility of leasing, as opposed to selling, the property were carried out between the Imagineers and Schwartz directly. That circumstance alone, however, does not vitiate the defendants' contractual obligation under the listing agreement. By its terms, the listing agreement was to provide the plaintiff with the exclusive right to offer the property for sale or lease. Under such an agreement, the sale or lease of the property during the contract period, no matter by whom negotiated, obligates the property owner to pay a com-

mission to the listing broker. See *Real Estate Listing Service, Inc.* v. *Real Estate Commission*, 179 Conn. 128, 132, 425 A.2d 581 (1979) (under exclusive right to sell listing agreement, property owner obligated to pay commission to listing broker regardless of who effects sale). Schwartz concedes that he successfully negotiated a lease of the premises during the time period covered by the parties' listing agreement. He further concedes that he did not remit any payment to the plaintiff as a result of having leased the subject property.

On the basis of the foregoing, we conclude that the court's finding that the plaintiff failed to prove its breach of contract claim by a preponderance of the evidence was clearly erroneous.[8]

The judgment is reversed and the case is remanded for further proceedings (1) to consider the defendants' special defense relating to § 20-325a (b) and (2) for a determination of the appropriate amount of damages.

In this opinion the other judges concurred.

---

[8] We also note that the defendants raised a special defense in their pleadings that the plaintiff had failed to comply with the provisions of General Statutes § 20-325a (b). The court concluded, however, that because the plaintiff had failed to prove its breach of contract claim, the court did not need to consider the defendants' special defense. In light of our reversal of the court's conclusion that the plaintiff had failed to prove its breach of contract claim, it will be necessary for the court to consider the defendants' special defense on remand.