## PATRICK PALMIERI v. FRANK CIRINO
### (AC 25784)

Schaller, McLachlan and Foti, Js.

---

Argued May 24—officially released August 23, 2005

*Vincent T. McManus, Jr.*, for the appellant (substitute plaintiff).

*Patricia A. Cofrancesco*, for the appellee (defendant).

*Opinion*

McLACHLAN, J. This appeal concerns whether the substitute plaintiff, Palmieri Cove Associates, LLC,[1] has the right to use a beach on New Haven harbor. The disputed beach formed along the western edge of the jetty starting on the plaintiff's property and along the northern boundary of the property owned by the defendant, Frank Cirino.[2] The trial court determined that the plaintiff has no right to use the beach. On appeal, the plaintiff claims that the court improperly (1) failed to conclude that the jetty is the plaintiff's real property, (2) determined the boundaries of the defendant's property and (3) found sufficient evidence to support an award of damages to the defendant on his counterclaim. We reverse the judgment only as to the award of damages and affirm it in all other respects.

The plaintiff is the owner of property located at 6-8 Cove Street (8 Cove Street) in New Haven. The plaintiff acquired the property from Patrick Palmieri on October 17, 2000. Palmieri, who is the principal of the plaintiff, acquired the property on December 30, 1998. The property is bounded on the north by New Haven harbor for 100 feet and on the west by the property of the defendant. (See appendix.) The defendant is the owner of property at 1 Cora Street in New Haven, which he acquired on February 7, 2000. The defendant's property is bounded on the north by New Haven harbor for 120 feet and on the east in part by the property of the plaintiff and in part by Cora Street.[3] Located west of the

---

[1] In an amended complaint filed October 6, 2003, Palmieri Cove Associates, LLC, was substituted for the named plaintiff, Patrick Palmieri. We refer in this opinion to the substitute plaintiff, Palmieri Cove Associates, LLC, as the plaintiff.

[2] See accompanying sketch in the appendix. The sketch is not drawn to scale. It is provided solely as a visual aid for the reader.

[3] The description of the defendant's north boundary as 120 feet on New Haven harbor does not include any possible change in the length of that boundary by virtue of the existence of the beach.

defendant's property, and also fronting on New Haven harbor, is property owned by the city of New Haven, known as Lighthouse Point Park. The deeds by which each party holds title include "all water rights, wharf rights and riparian rights and privileges connected with and appurtenant to the above described premises." The entire west boundary of the plaintiff's property is in common with a portion of the east boundary of the defendant's property.

On February 10, 1960, the plaintiff's predecessor in title submitted an application to the state board of harbor commissioners for New Haven harbor (board) for permission to build a rock groin and breakwater (jetty) on 8 Cove Street. The proposed jetty was described in part as having a length of 300 feet running north-south and 160 feet running approximately east-west. As stated in the application, the purpose of the jetty was to protect the property at 8 Cove Street from storm damage, to prevent the docking area from being filled with sand that had been shifting from Lighthouse Point Park and to establish a safe mooring area for small boats. On May 13, 1960, the board granted permission to build the jetty.

The jetty, built between 1960 and 1965, extends 300 feet northerly into New Haven harbor and later was extended in an easterly direction.[4] Prior to the construction of the jetty, the shoreline in front of 1 Cora Street was rocky with little or no sand beach. The jetty acted as a trap for the sand and, through accretion, sand was slowly deposited in front of 1 Cora Street creating a large sand beach. By 1986, the beach had formed fully on the west side of the jetty and in front of 1 Cora Street. This beach area is now triangular in shape being bounded on the east approximately 230 feet by the jetty, on the northwest approximately 300 feet by New Haven

---

[4] The extended portion of the jetty is not relevant to the issues in this case.

Harbor, and on the south approximately 80 feet by Lighthouse Point Park and 120 feet by the defendant's property at 1 Cora Street.

On November 27, 2002, Palmieri filed an amended complaint, seeking a declaratory judgment settling title to the beach. The defendant filed a counterclaim seeking removal of a concrete wall, removal of a portion of the jetty, and replacement of certain trees and fence posts.[5] The court found that the defendant is the owner of the entire beach, except for a small portion that abuts the property owned by the city of New Haven. The court also awarded the defendant $1000 in damages for the plaintiff's removal of the trees and ordered the removal of the concrete wall. This appeal followed.

I

We first address the plaintiff's claim that the court improperly failed to conclude that the jetty is land and part of the plaintiff's real property, thereby establishing an equal upland claim to the beach. The plaintiff asserts that because the jetty is upland to the beach, he is equally entitled to consideration for apportionment on the basis of the cove method[6] of apportioning littoral rights.

Whether the jetty is real property is a question of law that merits plenary review. There was not a need for the court to address that particular issue, however, once it made the factual determination that 2440 square feet of the original 300 foot jetty was located on the defendant's property. After making that factual determination, the court concluded that any accretion belonged to the defendant as the owner of the uplands. We therefore employ the standard of review that is customarily used

---

[5] See footnote 1.

[6] See *DelBuono* v. *Brown Boat Works, Inc.*, 45 Conn. App. 524, 526–27, 696 A.2d 1271 (explaining how, when cove method applied to resolve littoral boundary line disputes), cert. denied, 243 Conn. 906, 701 A.2d 328 (1997).

to review factual issues.[7] "We review the court's findings of fact under the clearly erroneous standard. . . . The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed . . . ." (Citation omitted; internal quotation marks omitted.) *Colliers, Dow & Condon, Inc.* v. *Schwartz*, 77 Conn. App. 462, 471–72, 823 A.2d 438 (2003).

The court heard testimony from several witnesses regarding the property lines at 1 Cora Street and 8 Cove Street. The court ultimately relied on the testimony of the defendant's witness, James Nagle. Nagle has been licensed as a land surveyor in Connecticut for fourteen years and has performed 300 to 400 surveys. After surveying the property at 1 Cora Street, Nagle prepared a map depicting the disputed beach and the defendant's

---

[7] The plaintiff maintains that the standard of review is plenary because the issues before the court involved the interpretation of deeds to establish property boundaries. Ordinarily, the interpretation of a deed is a matter of law subject to plenary review. *Torgerson* v. *Sarah Tuxis Residential Services, Inc.*, 81 Conn. App. 435, 439, 840 A.2d 66, cert. denied, 269 Conn. 903, 852 A.2d 737 (2004). The court, however, was not faced simply with the interpretation of a deed. The court made factual determinations regarding the parties' property lines after considering conflicting expert testimony and reviewing a plethora of documentary evidence, including deeds and maps. "[W]here the testimony of witnesses as to the location of the land described in deeds is in conflict, it becomes a question of fact for the determination of the court which may rely upon the opinions of experts to resolve the problem and it is the court's duty to accept that testimony or evidence which appears more credible." *Feuer* v. *Henderson*, 181 Conn. 454, 458, 435 A.2d 1011 (1980); see also *Ball* v. *Branford*, 142 Conn. 13, 17, 110 A.2d 459 (1954). We therefore employ the clearly erroneous standard of review.

property. At trial, Nagle identified the property boundaries on the map and explained how he was able to determine the location of the boundaries. The map illustrates how the jetty encroaches over the defendant's eastern boundary line. Nagle's testimony and the map support the factual findings of the court. It is not the duty of this court to retry the facts or to pass on the credibility of this witness. See id., 471. The court was free to accept or to reject, in whole or in part, the testimony of one expert over another. See *Koennicke* v. *Maiorano*, 43 Conn. App. 1, 14, 682 A.2d 1046 (1996). The court's factual determination that 2440 square feet of the original 300 foot jetty was located on the defendant's property was not clearly erroneous. Thus, the court's refusal to find that the jetty was part of the plaintiff's real property was not improper, and its conclusion that none of the accretion accrued upland of the plaintiff's property was correct, since all of the accretion accrued adjacent to that portion of the jetty sitting on the defendant's land.

II

The plaintiff next claims that the court incorrectly interpreted the intention expressed in the deeds by applying in its decision a deed description of parallel lines that had been abandoned 100 years earlier and further by failing to consider lines of occupation in interpreting any latent ambiguity in the deeds to the defendant's property. The plaintiff also claims that the court improperly adopted the legal reasoning represented by Nagle's map. The reasoning underlying that map led the court to conclude that the defendant's deed of acquisition was effective to convey to him property beyond the line of New Haven harbor as it was located at the time the description reported on the defendant's chain of title was drafted. Because these claims also address factual determinations made by the court weighing expert testimony regarding the parties' prop-

erty lines, we employ the clearly erroneous standard of review. See *Colliers, Dow & Condon, Inc.* v. *Schwartz,* supra, 77 Conn. App. 471–72.

At trial, Nagle testified about how he was able to resolve the location of the defendant's property lines that he depicted in the map. Nagle explained that to determine the boundary lines, he reviewed the deeds in both chains of title back to 1874, located stone monuments that helped to define the actual geometry of the street layouts, located iron pipes and pins set by surveyors and used several maps. Nagle and another of the defendant's witnesses, Thomas Lambert, an attorney, both testified, on the basis of their review of the relevant deeds, that the eastern boundary of the plaintiff and the western boundary of the plaintiff, which is the common boundary between the two parcels, and the western boundary of the defendant are and have been parallel since these properties were created out of a larger property in 1874, and that the common boundary has not changed since 1874. Lambert also agreed with Nagle's opinion as to the location of the common boundary line.

The court's conclusions regarding the defendant's eastern, western and northern boundary lines were supported by evidence introduced at trial and therefore were not clearly erroneous.

### III

The plaintiff further claims that the court improperly awarded damages of $1000 on the defendant's claim that the plaintiff had cut arborvitae trees and improperly ordered the plaintiff to remove a common wall originally constructed more than forty years ago and replaced in 2002. We agree with the plaintiff as to the award of damages, but affirm the judgment as to the removal of the wall.

"The determination of damages involves a question of fact that will not be overturned unless it is clearly

erroneous." *Westport Taxi Service, Inc.* v. *Westport Transit District*, 235 Conn. 1, 28, 664 A.2d 719 (1995).

Nagle testified that when he performed his survey of the property in August, 2002, he observed the presence of twenty arborvitae trees. The defendant testified that the plaintiff began removing trees from the defendant's property in the fall of 2003. He alleged that the plaintiff removed sixteen trees and shaved nine trees. During trial, the defendant introduced photographs of his property. In addition, the court saw the property firsthand when it visited the defendant's property before it issued its memorandum of decision. Although the court properly concluded that the trees were wrongfully removed from the defendant's property, it improperly awarded the defendant $1000 in damages.

The defendant in his counterclaim sought an order for the replacement of his trees, but did not seek money damages for their alleged wrongful removal. At trial, he was permitted to testify as to the estimated value of those trees.[8]

General Statutes § 52-560[9] permits the court to make an award for the reasonable value of the trees if the opposing party mistakenly believed that the trees were on his land. "Although § 52-560 provides that the injured

---

[8] "[The Defendant's Counsel]: Mr. Cirino, as you sit here today, do you know the value of those trees?

\* \* \*

"The Court: Finish your answer. The value of the trees is around what?

"[The Defendant]: I figure about thirty-eight, $3900 for labor and everything, Your Honor."

[9] General Statutes § 52-560 provides: "Any person who cuts, destroys or carries away any trees, timber or shrubbery, standing or lying on the land of another or on public land, without license of the owner, and any person who aids therein, shall pay to the party injured five times the reasonable value of any tree intended for sale or use as a Christmas tree and three times the reasonable value of any other tree, timber or shrubbery; but, when the court is satisfied that the defendant was guilty through mistake and believed that the tree, timber or shrubbery was growing on his land, or on the land of the person for whom he cut the tree, timber or shrubbery, it shall render judgment for no more than its reasonable value."

party in a tree cutting case is entitled to the 'reasonable value' of any tree that was destroyed, the replacement cost of the destroyed trees is not a proper measure of damages under § 52-560." *Stanley* v. *Lincoln*, 75 Conn. App. 781, 788–89, 818 A.2d 783 (2003). Rather, "the proper measure of damages is either the market value of the tree, once it is severed from the soil, or the diminution in the market value of the [defendant's] real property caused by the cutting." *Canton Village Construction, Inc.* v. *Huntington*, 8 Conn. App. 144, 147, 510 A.2d 1377 (1986).

Our Supreme Court has stated that when the trial court is faced with an action for a trespass to the land to which trees were appurtenant, "[i]t is an appropriate remedy either for the recovery of damages for the mere unlawful entry upon the [defendant's] land; for the recovery of the value of the trees removed, considered separately from the land; or for the recovery of damages to the land resulting from the special value of the trees as shade or ornamental trees while standing on the land. For a mere unlawful entry upon land nominal damages only would be awarded. If the purpose of the action is only to recover the value of the trees as chattels, after severance from the soil, the rule of damages is the market value of the trees for timber or fuel. For the injury resulting to the land from the destruction of trees which, as a part of the land, have a peculiar value as shade or ornamental trees, a different rule of damages obtains, namely, the reduction in the pecuniary value of the land occasioned by the act complained of." *Eldridge* v. *Gorman*, 77 Conn. 699, 701, 60 A. 643 (1905); see also *Canton Village Construction, Inc.* v. *Huntington*, supra, 8 Conn. App. 147.

The estimate given by the defendant during his testimony included the value of his trees, the cost of planting them plus "everything" else. Considering this testimony with the defendant's desire expressed in his counterclaim to have the trees replaced, it appears that the

defendant's estimate was for the replacement value of his trees and not their "reasonable value" as provided for in the statute. In seeking the replacement value as measured by the planting of new trees, the defendant in effect sought the special value of the trees standing on the land. The defendant, therefore, should have provided evidence regarding the diminution in the value of his land. The record is devoid of any testimony regarding the diminution in the value of the defendant's property resulting from the removal of the trees. There also was no evidence as to the market value of the trees separate from the land. The only evidence in the record regarding the value of the trees is the testimony of the defendant as to the cost of replacement. He did not provide any evidence as to the diminution in his property value or of the value of the trees separate from the land, nor did he present the court with any competent evidence on which to measure damages. Accordingly, the award of $1000 in damages was improper.[10]

The court also ordered the plaintiff to remove a concrete wall that encroached on the defendant's property. This encroachment, which was built in 2002, is depicted

---

[10] "Nominal damages are recoverable where there is a breach of a legal duty or the invasion of a legal right and no actual damages result or where, as here, such damages are not proven. . . . To obtain an award of more than nominal damages, facts must exist that afford a basis for measuring the [defendant's] loss with reasonable certainty. The evidence must be such that the jury may find the amount of this loss by reasonable inferences from the facts established, not by conjecture, speculation and surmise. . . .

"This court has previously declined to remand an action for a new trial for failure to award nominal damages on the basis that [n]o purpose would be furthered by a remand because the damages to be awarded to the [defendant] against the [plaintiff] could only be nominal based upon the substantive findings of the trial court . . . . We will not ordinarily remand a case for the mere failure to award nominal damages. . . . Although appellate courts ordinarily will not remand a case for the failure to award nominal damages, they have not hesitated in such circumstances simply to direct the trial court to render judgment for the prevailing party for $1 in nominal damages." (Internal quotation marks omitted.) *Wasko* v. *Manella*, 87 Conn. App. 390, 400 n.8, 865 A.2d 1223 (2005).

on the property survey map that Nagle prepared. The court had before it evidence that demonstrated that the wall was on the defendant's property; therefore the order to remove the wall was not legally improper.

The judgment is reversed only as to the award of damages for the removal of the defendant's trees and the case is remanded with direction to render judgment awarding nominal damages to the defendant with respect to that loss. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

## Appendix