DAVID H. PORTER *v.* MAUREEN MORRILL ET AL.
(AC 27739)

Flynn, C. J., and McLachlan and West, Js.

Argued March 10—officially released June 24, 2008

*James P. Brennan,* for the appellants (named defendant et al.).

*William C. Franklin,* for the appellee (plaintiff).

McLACHLAN, J. The defendant RMM Consulting, LLC,[1] appeals from the judgment of the trial court quieting title to a 1.728 acre parcel located in Warren (disputed parcel) in favor of the plaintiff, David H. Porter. The defendant claims that the court improperly failed to conclude (1) that the description of the disputed parcel contained in an 1816 deed in the plaintiff's chain of title was legally insufficient to convey title, (2) that it was the record owner of the disputed parcel and (3) that it had acquired title by adverse possession if it was not the record owner of the disputed parcel. We affirm the judgment of the trial court.

The facts that follow were either found by the court or are not in dispute. The plaintiff and the defendant are owners of adjoining properties located in the Lake Waramaug area of Warren. The plaintiff's father acquired 5.18 acres, a portion of the plaintiff's property, in 1937. In 1954, the plaintiff's father acquired a contiguous 5.64 acre tract, which is claimed to include the disputed parcel. The combined tracts, consisting of 10.82 acres, are shown on a 1954 map and were conveyed through a straw deed to the plaintiff's parents in survivorship. The plaintiff's father died in 1960. In August, 1986, the plaintiff's mother conveyed the 10.82 acre tract to the plaintiff. The property has been used by the plaintiff's parents and, subsequently, the plaintiff and his family as a summer cottage.

Maureen Morrill, the sole member of the defendant limited liability company, first became aware of the availability of two undeveloped lots in an approved

---

[1] RMM Consulting, LLC, and Maureen Morrill were named as defendants in this action, and both appealed. Morrill is the sole member of RMM Consulting, LLC, which claimed ownership of the disputed parcel. Because this appeal only involves the title to the disputed parcel, we refer in this opinion to RMM Consulting, LLC, as the defendant.

subdivision in the late summer or fall of 2002. As a builder of single-family houses, she entered into contracts for the purchase of those two lots in early 2003, each lot being owned by different owners. She engaged the services of Michael Riordan, a land surveyor, to revise the lot lines, and he prepared a revision map that was referred to in the defendant's deed recorded on May 15, 2003. The original two lots, referred to as old lots 9A and 9B by the parties and the court at trial, became new lots 9A and 9B. The disputed parcel is old lot 9B.

After the lot revisions were approved by local authorities, the defendant began the construction of a single-family dwelling on new lot 9A. In the fall of 2003, before construction had been completed, Morrill contacted the plaintiff by telephone to inquire about the removal of some trees from the plaintiff's property that would obstruct the view from the house being built. The content of that conversation is disputed, but a large number of trees were cut down between November, 2003, and May, 2004, by an individual hired by the defendant. The plaintiff, who resides in New York, was not at the Warren property during that time period.

The plaintiff returned to the summer cottage on May 22, 2004. At that time, he observed that numerous trees had been cut on his property. He investigated the area to determine the extent of the tree removal and discovered the house built by the defendant. When he saw it, he became concerned that it had been constructed on his property or, at the very least, was in violation of the town's setback requirements.[2] When he visited the town hall and reviewed the maps on file a few days later, he discovered that the defendant claimed a portion of his property.

---

[2] It is undisputed that the rear deck of the house is located on the disputed parcel.

The plaintiff commenced this action against the defendant and Morrill, claiming record title to the disputed parcel and title by adverse possession. The defendant and Morrill filed a counterclaim, also alleging record title and title by adverse possession.[3] The defendant and Morrill, as third party plaintiffs, additionally filed a complaint against Mary Lewis Sheehan, Monica E. Tague, Matthew Sheehan and John V. Sheehan, the third party defendants, who were the defendant's predecessors in title. They conveyed new lots 9A and 9B to the defendant by warranty deed. The third party plaintiffs and the third party defendants reached an agreement shortly after this appeal was filed, and the trial court rendered judgment in accordance with their stipulation on August 30, 2006.[4]

During a seven day trial, the court heard testimony from several expert and fact witnesses for the plaintiff

[3] In addition to those claims, the plaintiff's seven count amended complaint alleged trespass, nuisance, unjust enrichment, violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq., and diminution in the value of his property due to the loss of his trees. The defendant and Morrill's five count counterclaim also alleged slander of title, tortious interference with a contract and fraud. Following a case management conference, the court ordered the title and adverse possession issues to be severed from all other counts for purposes of trial.

After the court issued its memorandum of decision quieting title in the plaintiff, the defendant and Morrill withdrew the remaining counts of their counterclaim and then filed the present appeal. The plaintiff filed a motion to dismiss the appeal, claiming that there was no final judgment. This court denied the motion as to the defendant's and Morrill's counterclaim. The partial judgment on the plaintiff's complaint is not part of this appeal.

[4] At oral argument before this court, counsel for the plaintiff suggested that the defendant was collaterally estopped from pursuing its claims because of the stipulated judgment. Although that judgment had been rendered prior to the filing of the appellate briefs in this case, the issue had not been raised previously by the plaintiff. Collateral estoppel does not implicate a court's subject matter jurisdiction. *State* v. *T.D.*, 286 Conn. 353, 360 n.6, 944 A.2d 288 (2008). We, therefore, decline to address this issue. "We generally do not consider claims raised for the first time at oral argument." (Internal quotation marks omitted.) *Zelvin* v. *JEM Builders, Inc.*, 106 Conn. App. 401, 408 n.6, 942 A.2d 455 (2008).

and the defendant. It also admitted eighty-six exhibits, including deeds and maps from both chains of title. Following trial, the court issued a fifty-five page memorandum of decision in which it painstakingly evaluated both parties' claims of record title and adverse possession. It concluded that the plaintiff was the record owner of the disputed parcel and that the defendant had not proved title by adverse possession.

In that decision, the court found that each side relied on a chain of deeds going back to the eighteenth century. The common grantor, Elias Taylor, acquired the Peters Farm in 1798, which consisted of approximately 155 acres. In 1816, Taylor conveyed two separately described parcels, totaling thirty-six acres, from that farm to Ebenezer Thomas, the plaintiff's predecessor in title. The second parcel, which the plaintiff claims is the disputed parcel, was described as a one acre woodlot adjoining the north side of the first described parcel.[5] In 1839, Taylor conveyed the remainder of the farm to Daniel Beeman, Jr., the defendant's predecessor in title. Subsequently, Lucinda Beeman, in a deed in the plaintiff's chain of title, more particularly described the woodlot as being located at the northwest corner of the first described parcel. She also referenced the Taylor to Thomas deed in describing the woodlot in that 1852 deed. Until 1852, the woodlot had not been located precisely on the northern boundary of the first parcel.

The court rejected the defendant's claim that the disputed parcel became included in its chain of title when the remainder of the farm was conveyed to its predecessor in title in 1839. The court was not persuaded by the argument that it was "accidentally" conveyed to the defendant's predecessor in title because

---

[5] The handwritten deed from Taylor to Thomas is difficult to read. Although it is clear that the deed was recorded at volume 7, page 3 of the Warren land records, the date that it was recorded is not apparent. The acknowledgement on the deed is dated July 25, 1816, and the parties and the court referred to this deed as the 1816 deed.

the description of the woodlot in the 1816 deed was too uncertain to convey title to the plaintiff's predecessor in title. The court found that the 1852 deed "corrected and improved" the less than perfect description in the 1816 deed, that the disputed parcel first became included in the plaintiff's chain of title by way of the 1816 deed and that it has remained in the plaintiff's chain of title since that time.

With respect to the defendant's various other claims concerning perceived inaccuracies in the plaintiff's chain of title, the court found that the deficiencies in the defendant's chain of title "far outweigh[ed], individually and collectively, the alleged kinks in the plaintiff's chain of title." In reaching that determination, the court noted that the plaintiff's title expert and the defendant's title expert searched both chains of title. The court found, however, that unlike the plaintiff's expert, the defendant's expert "was very defensive on cross-examination." Further, in evaluating the testimony of Riordan, the defendant's surveyor, the court considered his bias and motivation in light of the fact that he had prepared the lot revision map for the defendant *prior* to its purchase of the disputed parcel. Even though Riordan discovered conflicting claims of ownership while researching the relevant conveyances and maps in the preparation of his survey map, he never shared that information with the defendant.

With respect to the defendant's adverse possession claim, the court agreed that the defendant used the disputed parcel openly, notoriously and under claim of right from the time it purchased new lots 9A and 9B in 2003. The court found, however, that the defendant failed to provide any evidence that its predecessors in title *used* the disputed parcel "for any purpose whatsoever." The court concluded that the defendant failed to prove the elements of adverse possession by clear

and convincing evidence. Accordingly, the court rendered judgment quieting title to the disputed parcel in the plaintiff. This appeal followed.

I

The defendant first claims that the description of the woodlot in the 1816 deed was legally insufficient to convey title to Thomas, the plaintiff's predecessor in title. Specifically, the defendant argues that the conveyance of the woodlot from Taylor to Thomas was ineffective because the description failed to describe and locate the one acre woodlot with the specificity required by law. The defendant further claims that the 1852 deed from Lucinda Beeman, which located the woodlot at the northwest corner of the first described parcel, could not correct or clarify a deed that was void for indefiniteness.

The court's determination that the ambiguous description of the woodlot in the 1816 deed did not void the attempted conveyance to Thomas is a question of law that merits plenary review. To reach that determination, it is necessary to construe the language in that deed. "Ordinarily, the interpretation of a deed is a matter of law subject to plenary review." *Palmieri* v. *Cirino*, 90 Conn. App. 841, 846 n.7, 880 A.2d 172, cert. denied, 276 Conn. 927, 889 A.2d 817 (2005).

The principles governing the construction of instruments of conveyance are well established. "In construing a deed, a court must consider the language and terms of the instrument as a whole. . . . Our basic rule of construction is that recognition will be given to the expressed intention of the parties to a deed or other conveyance, and that it shall, if possible, be so construed as to effectuate the intent of the parties. . . . In arriving at the intent expressed . . . in the language used, however, it is always admissible to consider the

situation of the parties and the circumstances connected with the transaction, and every part of the writing should be considered with the help of that evidence. . . . [I]f *the meaning of the language contained in a deed or conveyance is not clear, the trial court is bound to consider any relevant extrinsic evidence presented by the parties for the purpose of clarifying the ambiguity.*" (Citation omitted; emphasis added; internal quotation marks omitted.) *Lakeview Associates* v. *Woodlake Master Condominium Assn., Inc.*, 239 Conn. 769, 780–81, 687 A.2d 1270 (1997).

After the description of the first conveyed parcel in the 1816 deed from Taylor to Thomas, the second parcel was described as follows: "Also one acre of woodland adjoining to the north side of the first described piece, being about thirty rods long east and west, and to be of equal width at the east and west ends." The northern boundary of the first parcel, which ran along a stone wall, was approximately 1030 feet. The second parcel, the one acre woodlot, was approximately 495 feet in length. The description in the 1816 deed, therefore, did not locate precisely the woodlot along that northern boundary. All parties agree that the description was ambiguous.

That description was not made more specific until the 1852 conveyance from Lucinda Beeman to Edwin R. Beeman. That deed, which is in the plaintiff's chain of title, describes the second parcel as follows: "Also one acre adjoining said land on the northwest corner about thirty rods long east and west to be of equal width at the east and west ends and for reference had to Thomas deed from Elias Taylor . . . ." The parties agree that the description in the 1852 deed was sufficient to locate that parcel along the northern boundary of the first parcel, but the defendant argues that the subsequent deed could not correct the 1816 deed because the 1816 deed was invalid.

Although the description of the woodlot contained the requisite dimensions of the land being conveyed, it was ambiguous because it did not locate the parcel with precision on the northern boundary of the first piece. We conclude, as did the parties and the trial court, that the description of the one acre woodlot in the 1816 deed was ambiguous. It was not, however, so indefinite as to render the conveyance void as claimed by the defendant.

The defendant does not provide us with any cases that are factually similar to this case. It references the general language in treatises that provides that property descriptions in instruments of conveyance must be definite enough to ascertain the location of the land. The treatises, however, also provide that courts will generally strive to interpret documents so as to validate the transaction. See 14 R. Powell, Real Property (2008) § 81A.07 [1] [e], p. 81A-137. "People will be presumed not to intend nullities by their solemn conveyances." 23 Am. Jur. 2d 207, Deeds § 199 (2002). "A deed is not void for uncertainty of description if the quantity, identity, or boundaries of the property can be determined by reference to extrinsic evidence." 23 Am. Jur. 2d 244, supra, § 259.

This is not a situation in which it is impossible to determine the location of the land, such as the conveyance of a portion of a larger tract of land without dimensions or placement within that larger tract (e.g., a one acre parcel out of a 155 acre tract on Curtis Road). The only uncertainty in this case was the woodlot's precise location along the stone wall on the northern boundary of the first conveyed parcel. That ambiguity was resolved thirty-six years later when Lucinda Beeman situated the one acre parcel at the northwest corner. At that time, the description was definite and the exact location of the land was ascertainable.

Although the defendant agrees that the description was ambiguous and that the court could consider extrinsic evidence to determine the intention of the parties, it insists that the court could consider evidence only as to the surrounding circumstances at the time of the conveyance in 1816 and the situation of Taylor and Thomas at that time. We disagree. This title problem originated with a deed that is nearly 200 years old. The intention of Taylor and Thomas cannot be determined if the court is restricted solely to a review of the 1816 deed; the individuals who could provide information relative to that conveyance died many years ago. The only intention that *is* apparent from the 1816 deed is that Taylor intended to convey a one acre woodlot adjoining to the north of the first parcel that he conveyed to Thomas.

Moreover, there is extrinsic evidence that does locate the property with certainty. "[I]f the meaning of the language contained in a deed or conveyance is not clear, the trial court is bound to consider any relevant extrinsic evidence presented by the parties for the purpose of clarifying the ambiguity." *Lakeview Associates* v. *Woodlake Master Condominium Assn., Inc.*, supra, 239 Conn. 780–81. The 1852 deed is relevant extrinsic evidence.

Further, even though the standards of title of the Connecticut Bar Association are not controlling, contractually or otherwise, they do establish the custom in the legal community. Id., 782 n.20. Standard 10.1 provides: "Errors, irregularities and deficiencies in property descriptions in the chain of title do not impair marketability unless, after all circumstances of record are taken into account, a substantial uncertainty exists as to the land which was conveyed or intended to be conveyed, or the description falls beneath the minimal requirement of sufficiency and definiteness which is essential to an effective conveyance. *Lapse of time,*

*subsequent conveyances, the patent or typographical nature of errors or omissions, accepted rules of construction, and other considerations should be relied upon to approve marginally sufficient or questionable descriptions.*" (Emphasis added.) Connecticut Bar Association, Connecticut Standards of Title (1999), standard 10.1. Comment one of that standard additionally provides that "[i]t is reasonable to rely upon corrections or improved descriptions appearing in later conveyances and upon the passage of time in which difficulty has not arisen from the less than perfect description. All matters of record, such as adjoining descriptions, maps and surveys on file and the land owned by the grantor, can be means of explanation for the problem description." Id., comment one.

In the present case, we find the standards and comments to be helpful in resolving this issue. An 1816 deed containing an ambiguous description was clarified by a subsequent grantee in 1852. The court properly considered the relevant extrinsic evidence found in the Warren land records to locate the one acre woodlot, which is the disputed parcel. We conclude, therefore, that the description in the 1816 deed was not insufficient as a matter of law to convey title to that parcel.

## II

The defendant next claims that the court improperly concluded that the plaintiff, rather than the defendant, was the record owner of the disputed parcel. Specifically, the defendant argues that because of the various inaccuracies in the plaintiff's chain of title, it established record title through the submission of deeds and maps going back to 1839.

Whether a disputed parcel of land should be included in one or another chain of title is a question of fact for the court to decide. *Feuer* v. *Henderson*, 181 Conn. 454, 458, 435 A.2d 1011 (1980). In such a determination, it

is the court's duty to accept the testimony or evidence that appears more credible. Id. It is well settled that we review the court's findings of fact under the clearly erroneous standard. "We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed . . . ." (Internal quotation marks omitted.) *Palmieri* v. *Cirino*, supra, 90 Conn. App. 846.

A substantial amount of evidence was presented by the parties at trial, consisting of eighty-six exhibits, including maps, surveys, photographs and deeds together with considerable testimony from expert and fact witnesses. The defendant does not claim that there was no evidence to support the court's conclusions; instead, it claims that its evidence was more substantial in light of the inaccuracies in the plaintiff's chain of title.

The defendant brought all of the perceived inaccuracies in the plaintiff's chain of title to the court's attention at trial. The court thoroughly addressed each claim in its memorandum of decision. It recognized the discrepancies between the configuration and acreage of the original conveyance and the disputed parcel as surveyed—the woodlot in 1816 being described as one acre in size and 495 feet by 88 feet in dimension and the surveyed disputed parcel being an irregularly shaped quadrangle totaling 1.728 acres. It also noted discrepancies in the number of acres deeded to Julian Voisard, the plaintiff's predecessor in title, and the number of acres that he conveyed to various grantees. Further, it acknowledged the omission of an abutting owner in the eastern call of the description in the deed from Alice Strong to Voisard. Nevertheless, the court concluded

that the inaccuracies in the defendant's chain of title[6] "far outweigh[ed], individually and collectively," the inaccuracies in the plaintiff's chain of title.

"[I]t is the function of the trial court to weigh the evidence and the credibility of the parties and to find the facts; we cannot retry the case on appeal." *Riscica* v. *Riscica*, 101 Conn. App. 199, 207, 921 A.2d 633 (2007). "The court [is] free to accept or to reject, in whole or in part, the testimony of one expert over another." *Palmieri* v. *Cirino*, supra, 90 Conn. App. 847. In the present case, the court heard extensive testimony from the plaintiff's title expert and surveyor, who explained in detail the bases for their conclusion that the plaintiff was the record owner of the 1.728 acre parcel. The thrust of the defendant's argument is that the court should have credited its evidence and found in its favor. We conclude that the record contains ample evidence to support the court's conclusion as to the ownership of the disputed parcel and that its factual determinations were not clearly erroneous.

## III

The defendant's final claim is that the court improperly concluded that it had not proven the elements of

---

[6] The court noted, inter alia, the following problems in the defendant's chain of title: (1) a map prepared in 1936 for Winifred Young, the defendant's predecessor in title, indicated that her property was 45.7 acres in size when she received 41.5 acres from her grantor; (2) subsequent maps were "traced from" the Young map; (3) Young entered into a bond for deed with Housatonic Valley Insurance Agency, Inc. (agency), using the Young map description but conveyed the property to the agency using the original 41.5 acre description by which she took title; (4) the agency conveyed the 41.5 acres by warranty deed to Hoyt Smith and Helen Smith but excepted from that conveyance one and one-half acres "claimed by Julian P. Voisard." The agency then quitclaimed the one and one-half acres by a separate instrument to the Smiths; (5) Hoyt Smith also conveyed the one and one-half acre parcel by quitclaim deed after excepting it from a warranty deed conveying the remaining property; and (6) when the property was subdivided and the disputed parcel became old lot 9B, the subdivision map did not provide access to that lot; it was landlocked, and the adjoining lots were not subject to a right-of-way in favor of old lot 9B for ingress and egress.

adverse possession. Specifically, the defendant claims that the evidence it submitted demonstrating that it paid taxes on the property, that it cleared and built a house on the property and that its predecessors in title filed subdivision maps incorporating the disputed parcel into the defendant's chain of title constituted clear and convincing evidence that it acquired title by adverse possession. We disagree.

We first set forth the applicable standard of review. "Because adverse possession is a question of fact for the trier . . . the court's findings as to this claim are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . [O]nly in rare instances is [an appellate] court justified in holding, as a matter of law, that [adverse possession] has been established. A trial court's findings in an adverse possession case, if supported by sufficient evidence, are binding on a reviewing court . . . .

"Where title is claimed by adverse possession, the burden of proof is on the claimant. . . . The essential elements of adverse possession are that the owner shall be ousted from possession and kept out uninterruptedly for fifteen years under a claim of right by an open, visible and exclusive possession of the claimant without license or consent of the owner. . . . Such a possession is not to be made out by inference, but by clear and convincing proof. . . . The doctrine of adverse possession is to be taken strictly." (Citations omitted; internal quotation marks omitted.) *Rudder* v. *Mamanasco Lake Park Assn., Inc.*, 93 Conn. App. 759, 779–80, 890 A.2d 645 (2006).

The defendant argues that its payment of local property taxes on the disputed parcel supports its adverse possession claim. "Payment of property taxes is powerful evidence to show that the occupier claimed the land

as his own . . . although it is not dispositive." (Citations omitted; internal quotation marks omitted.) *Top of the Town, LLC* v. *Somers Sportsmen's Assn., Inc.*, 69 Conn. App. 839, 849, 797 A.2d 18, cert. denied, 261 Conn. 916, 806 A.2d 1058 (2002). In the present case, however, the defendant's argument fails because the plaintiff also was paying taxes on the disputed parcel. The court found that "[the plaintiff] also has been paying taxes to the town of Warren on the same piece and, therefore, is likewise entitled to claim equal benefit from said evidence." The defendant does not dispute that finding by the court.

With respect to the defendant's use of the disputed parcel, the court acknowledged that its actions in staking old lot 9B, digging test holes for the septic system, blasting rock and removing trees satisfied the elements of open and notorious use under a claim of right. The court found, however, that none of those incidents of ownership took place prior to 2003. The defendant presented no evidence that indicated his predecessors in title similarly used the disputed parcel.[7] The defendant argues that the recording of the subdivision maps in 1972 and 1973 placing the disputed parcel in the defendant's chain of title demonstrates a claim of right sufficient to meet the standard for adverse possession. Significantly, he cites no case law in support of that contention.

We conclude that the court's finding that the defendant failed to prove adverse possession of the disputed area has evidentiary support and, therefore, was not clearly erroneous. The court properly concluded that

[7] The defendant did suggest that Winifred Young, its predecessor in title, "corralled" an area by the stone wall and that "[i]t appears that [she] used old lot 9B as a grazing area for animals." There is no indication, however, as to the exact area corralled or how many years the fence was in place. Moreover, there was no evidence that Young's successors, until 2003, ever used the corralled area for any purpose.

the defendant had not ousted the plaintiff or its predecessors of possession for fifteen years by open, visible and adverse acts.

The judgment is affirmed.

In this opinion the other judges concurred.