## DONALD L. SOMERS ET AL. *v.* JOSEPH P. LEVASSEUR, JR., ET AL.
### (14904)

CALLAHAN, BORDEN, KATZ, PALMER and DUPONT, Js.

Argued May 6—decision released August 2, 1994

*Suzanne E. Caron,* with whom, on the brief, was *Robert J. Shluger,* for the appellants (named defendant et al.).

*David R. Lynch,* for the appellees (plaintiffs).

CALLAHAN, J. This case requires us to decide whether the trial court properly determined the scope and extent of the prescriptive right-of-way of the defendants, Joseph and Alene LeVasseur, over land owned by the plaintiffs, Donald L. and Betty Jo Somers. The defendants appealed from the judgment of the trial court to the Appellate Court. We transferred their appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We affirm the judgment of the trial court.

The trial court could reasonably have found the following facts. The plaintiffs own real estate located on the east side of Thompson Street in Glastonbury, southwest of the defendants' property. Since the defendants purchased their property in 1974, they have consistently used a dirt road, or wheel track, located on the northern part of the plaintiffs' property, to reach their own property from Thompson Street. It is undisputed that the defendants have thereby acquired by prescrip-

tion a right-of-way over the road. The defendants' use of the road since 1974 has included the transportation of horses and dogs, in eight foot trailers, and the delivery, by truck, of propane gas to generate electricity. In 1977, the defendants installed underground telephone lines along the course of the road. The plaintiffs' house is located approximately fifteen feet from the road.

The plaintiffs brought this action for injunctive relief claiming that the defendants, since 1987, had enlarged the scope of the right-of-way, were traveling over the right-of-way at unreasonable speeds and were improperly using the right-of-way for commercial purposes. By agreement, both parties asked the court to determine the "location, dimension, scope, intensity and use" of the right-of-way. The defendants asked the trial court to sanction, in particular, the installation of electrical utility lines along the right-of-way.

After hearing the evidence and viewing the right-of-way and the surrounding property, the trial court concluded that: (1) the defendants had traveled the right-of-way at an unsafe or unreasonable speed causing noise, dust, vibration and injury to the plaintiffs' driveway; (2) the trailers transporting horses and dogs are not an unreasonable or commercial use of the right-of-way, provided they are driven at reasonable speeds; and (3) the installation of electrical utility lines would harm the property on either side of the easement. Pursuant to these findings the court ordered that: (1) the defendants be prohibited from installing electrical lines above[1] or beneath the right-of-way; (2) the width of the right-of-way from Thompson Street to a point sixty-six feet east of Thompson Street (front section) is ten feet, the width of the right-of-way from the sixty-six

---

[1] The trial court's decision that the defendants' installation of above ground electrical lines would be an inappropriate use of the right-of-way has not been challenged on appeal.

foot mark to a point 450.59 feet east of Thompson Street (middle section) is nine feet, and thereafter (final section) the width of the right-of-way is twelve feet; (3) the defendants may continue to use trailers not to exceed twenty-eight feet in length to transport dogs and horses to and from the property; and (4) the defendants must travel at speeds not to exceed five miles per hour on the front and middle sections of the right-of-way. The court further ordered the defendants to pave the front section of the right-of-way with bituminous concrete or amesite and to install gravel or a reasonable substitute along the remaining portion of the right-of-way. The defendants were ordered to pay the first $1000 required for the installation of paving and the remaining costs were to be borne by the plaintiffs.

Pursuant to the plaintiffs' motion, the trial court opened its judgment and modified its orders regarding the paving of the driveway, reasoning that it had not appreciated the full costs of installing the paving. The amended judgment required the defendants to pay to the plaintiffs $1000 for damages caused by their unreasonable use of the right-of-way. The judgment also ordered the defendants to maintain the front section of the road by installing gravel or a reasonable substitute, and prohibited the installation of bituminous concrete or amesite. Pursuant to the defendants' motion, the court opened its judgment for a second time, and struck that portion of its amended judgment requiring the defendants to pay damages. This appeal by the defendants followed.

I

The defendants initially claim that the trial court improperly allowed Donald Somers to testify concerning how the installation of electrical utility lines beneath the right-of-way would burden the plaintiffs' property. The defendants argue that Somers was not qualified

as an expert and should not have been permitted to testify concerning a subject that required expertise. We disagree.

We have recently reviewed the standard for determining when a proposed enlargement of a prescriptive right-of-way is permissible. " 'It is well settled that when an easement is established by prescription, the common and ordinary use which establishes the right also limits and qualifies it.' *Hawley* v. *McCabe,* 117 Conn. 558, 560, 169 A. 192 (1933); see *New Canaan Country School, Inc.* v. *Rayward,* 144 Conn. 637, 640–41, 136 A.2d 742 (1957); *Aksomitas* v. *South End Realty Co.,* 136 Conn. 277, 281, 70 A.2d 552 (1949); L. Jones, Easements § 415; 5 Restatement, Property §§ 477, 478. ' "The use of an easement must be reasonable and as little burdensome to the servient estate as the nature of the easement and the purpose will permit." ' *Center Drive-In Theatre, Inc.* v. *Derby,* 166 Conn. 460, 465, 352 A.2d 304 (1974), quoting 2 G. Thompson, Real Property (1961 Replacement) § 427, p. 699 . . . ." (Citation omitted.) *Kuras* v. *Kope* 205 Conn. 332, 341, 533 A.2d 1202 (1987). "[A]lthough the making of repairs and improvements necessary to the effective enjoyment of a prescriptive easement is incidental to the easement, repairs and improvements, and 'particularly the latter,' will not be permitted if they will unreasonably increase the burden on the servient tenement." Id., 344. The decision as to what would constitute a reasonable use of a right-of-way is for the trier of fact whose decision may not be overturned unless it is clearly erroneous. Id., 345; *Peterson* v. *Oxford,* 189 Conn. 740, 747, 459 A.2d 100 (1983).

On cross-examination of Somers, the defendants' attorney asked: "What about the installation of electric power lines to service the defendants' home from Thompson Street to their property over or underground of this roadway? How would that affect or bur-

den you?'' When the plaintiff objected to the question, the defendants vigorously argued that the answer sought was relevant to the case. Somers was, thereafter, allowed to answer the defendants' question. In his reply he stated: "If you . . . went overhead with a power line that required a sixty foot free area or no trees, that means a lot of trees have got to be cut. Going underground would mean blasting through ledge which is all the way up there." The defendants' attorney then asked Somers whether the existence of underground electrical utility lines would burden the property after they had been installed. To that question, Somers responded that they would not.

On redirect examination of Somers, the plaintiffs' attorney referred back to the subject of the electrical utility lines and asked him how any potential blasting might affect his property. Over the defendants' objection, Somers was allowed to respond that blasting might damage his house which does not have a poured foundation. He further testified that the digging which would be required to install electrical utility lines might harm stone walls and trees on his property and that at least one of these trees could potentially fall on his house.

"[A] party who delves into a particular subject during the examination of a witness cannot object if the opposing party later questions the witness on the same subject. *State* v. *Roy*, 173 Conn. 35, 50, 376 A.2d 391 (1977); [C. McCormick, Evidence (4th Ed. 1992) § 57]. The party who initiates discussion on the issue is said to have 'opened the door' to rebuttal by the opposing party." *State* v. *Graham*, 200 Conn. 9, 13, 509 A.2d 493 (1986). The purpose of allowing the introduction of such evidence is not to give the opposing party a license to introduce unreliable or irrelevant evidence but to allow the opposing party to put the initial offer of evidence into its proper context. Id.; *State* v. *Glenn*,

194 Conn. 483, 498–99, 481 A.2d 741 (1986); 1 J. Wigmore, Evidence (4th Ed. 1983) § 15, p. 750. Thus, the trial court must "consider whether the circumstances of the case warrant further inquiry into the subject matter, and should permit [the evidence] . . . to the extent necessary to remove any unfair prejudice which might otherwise have ensued from the original evidence." (Internal quotation marks omitted.) *State* v. *Graham*, supra, 14. Such a decision, of course, rests within the discretion of the trial court. Id.; *State* v. *Roy*, supra, 50.

The defendants opened the door to the challenged testimony by soliciting Somers' testimony as to how the installation of electrical utility lines would affect his property and elicited the response that the electrical utility lines would impose no burden on his property except for any damages that might be caused by their installation. Once the defendants solicited this testimony, they could not reasonably expect to exclude further testimony on how the installation of the electrical utility lines might harm the plaintiffs' property.[2]

[2] Moreover, Somers, who had lived on his property continuously since 1935, including the period when underground telephone lines were installed in 1977, was not necessarily incompetent to testify as to how blasting and digging might affect his land. "The question of [a witness'] competency to testify on technical real estate matters is an issue to be determined by the trier through an assessment of the nature of the technicality involved and the proposed witness' level of expertise concerning these matters." *Varley* v. *Varley,* 189 Conn. 490, 501, 457 A.2d 1065 (1983). We have concluded that property owners are qualified to testify as to the value of the property based in part on the "common experience that an owner is familiar with her property . . . ." *State* v. *Simino,* 200 Conn. 113, 120, 509 A.2d 1039 (1986), quoting *State* v. *Baker,* 182 Conn. 52, 60–61, 437 A.2d 843 (1980). Similarly, we have allowed property owners to testify regarding the physical damages caused to their property from blasting. *King* v. *New Haven Trap Rock Co.,* 146 Conn. 482, 483, 152 A.2d 503 (1959). Although it is far from clear that Somers was fully qualified to testify regarding the burden which would be imposed on his property by the installation of power lines, we need not decide this question because we find that the defendants "opened the door" to Somers' testimony by introducing the subject on cross-examination.

" 'It would be . . . strange, if [a party] could claim the benefit of the evidence which he had adduced, and, at the same time, exclude the evidence on the other side, to refute it . . . .' " *State* v. *Segar,* 96 Conn. 428, 442, 114 A. 389 (1921), quoting *Barnes* v. *State,* 20 Conn. 254, 257 (1850). Under these circumstances, we conclude that the trial court's decision to allow Somers to testify on redirect examination in order fully to explain his testimony that initially had been solicited by the defendants on cross-examination was not an abuse of its discretion.

## II

The defendants also claim that the trial court improperly: (1) determined that the defendants' installation of electrical utility lines under the right-of-way would constitute an impermissible expansion of the right-of-way; (2) determined the width of the right-of-way; and (3) prohibited the defendants from installing bituminous concrete or amesite on the portion of the roadway owned by the plaintiffs. Because we find that the record adequately supports the trial court's conclusions, we disagree.

## A

Because it was the defendants who sought a declaration that the installation of electrical utility lines under the right-of-way would be a permissible use of the easement, it was their burden to persuade the court that installation of the electrical utility lines (1) was reasonably necessary for the continued enjoyment of the right-of-way,[3] *and* (2) would not unreasonably burden the plaintiffs' property. See *Kuras* v. *Kope,* supra, 205

---

[3] Because the trial court found that the defendants failed to demonstrate that the installation of electric utility lines would not unreasonably burden the servient estate, the court never reached the issue of whether the improvement was reasonably necessary for the defendants' continued enjoyment of the easement.

Conn. 344. It is an " ' "elementary rule that whenever the existence of any fact is necessary in order that a party may make out his case . . . the burden is on such party to show the existence of such fact." ' *Nikitiuk* v. *Pishtey,* 153 Conn. 545, 552, 219 A.2d 225 (1966); see also C. McCormick, Evidence (3d Ed. 1984) § 337. This rule is derived from the traditional principle that in a civil case '[t]he general burden of proof rests upon the plaintiff . . . .' *Silva* v. *Hartford,* 141 Conn. 126, 129, 104 A.2d 210 (1954)." *Eichman* v. *J & J Building Co.,* 216 Conn. 443, 451, 582 A.2d 182 (1990).

The only evidence before the court on the issue of the extent of the burden the electrical utility lines would impose on the servient estate was the trial court's view of the premises and Somers' testimony that any blasting or digging necessary to install electrical utility lines might damage the house, stone walls and trees on his property. The defendants concede that other than testimony elicited from Somers on cross-examination, they never attempted to present any affirmative evidence, such as expert testimony, which might have led the court to conclude that the installation of the electrical utility lines would not present an unreasonable risk of harm to, and hence unduly burden, the plaintiffs' property. In view of the fact that the only evidence introduced at trial supported the court's conclusion that the installation of underground electrical utility lines would unreasonably burden the plaintiffs' property, the court properly determined that the defendants, who bore the burden of proof, had failed to demonstrate that the installation of electrical utility lines was a permissible use of the right-of-way.[4]

---

[4] The defendants' claim at oral argument that the court erred by considering the effects of installation when it considered whether the proposed power lines under the right-of-way would burden the servient estate is with-

## B

The defendants also argue that the trial court's determination of the width of the easement was improper because the court failed adequately to take into account considerations of safety in making its determinations. The defendants misconstrue the applicable standard. The defendants' rights derive from their common and ordinary use of the easement during the prescriptive period. Although the court may have allowed the defendants to make improvements which were reasonably necessary to allow them to make safer use of the easement, the court was not bound to allow improvements that were inconsistent with the defendants' actual use of the right-of-way during the prescriptive period or that would impose additional burdens on the servient estate. See *Kuras* v. *Kope,* supra, 205 Conn. 344; *Peterson* v. *Oxford,* supra, 189 Conn. 744–45. Although the defendants' expert, John Miller, an engineer and licensed land surveyor, testified that the right-of-way should be between sixteen and eighteen feet to allow safe passage of the type of vehicles ordinarily used by the defendants over the right-of-way, he also testified that the actual wheel track was only between eight and thirteen feet wide. The plaintiffs' expert, John Heagle, also an engineer and licensed land surveyor, testified that the wheel track was approximately eight feet wide across its entire length. Joseph Jiovo, whose property bordered the right-of-way, testified that he had used the right-of-way for forty years, and that the right-of-way had basically stayed the same since 1972. Moreover, the trial court actually viewed the right-of-way before making its determination. After a careful review, we find nothing in the record to sug-

out merit. Because installation is, of course, necessary for the proposed underground power lines, the court must consider any burdens caused by installation.

gest that in defining the dimensions of the right-of-way, the trial court failed properly to balance the defendants' rights to make reasonable improvements necessary for their continued enjoyment of the right-of-way against the plaintiffs' interest in avoiding undue additional burdens to the servient estate.

## C

Similarly, we find nothing improper in the trial court's conclusion that the defendants had the right to install gravel on the front section of the right-of-way but could not improve it by paving it with bituminous concrete or amesite. At trial, both Donald and Betty Jo Somers testified that a paved road would increase the volume and speed of traffic on the road and Donald Somers testified that a paved roadway would detract from the rural atmosphere of the property. Moreover, the defendants have not appealed from the trial court's conclusion that they were causing a nuisance to the plaintiffs by driving at high speeds along the right-of-way. In light of these circumstances, it was not unreasonable for the trial court to deny the defendants permission to pave the right-of-way, which might induce them to travel even faster and more frequently over its length.

## III

The defendants' final claim is that the trial court improperly overruled their objection to the plaintiffs' motion to open and to modify the judgment. We disagree.

"The principles that govern motions to open or set aside a civil judgment are well established. Within four months of the date of the original judgment, Practice Book § 326 vests discretion in the trial court to determine whether there is a good and compelling reason for its modification or vacation. *TLC Development, Inc.*

v. *Planning & Zoning Commission,* 215 Conn. 527, 533–34, 577 A.2d 288 (1990); *Gillis* v. *Gillis,* 214 Conn. 336, 340–41, 572 A.2d 323 (1990); *Sanchez* v. *Warden,* 214 Conn. 23, 35, 570 A.2d 673 (1990); *Acheson* v. *White,* 195 Conn. 211, 214–15, 487 A.2d 197 (1985); *Steve Viglione Sheet Metal Co.* v. *Sakonchick,* 190 Conn. 707, 713, 462 A.2d 1037 (1983)." *Hirtle* v. *Hirtle,* 217 Conn. 394, 398, 586 A.2d 578 (1991). "In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of its action. *State* v. *Bitting,* 162 Conn. 1, 11, 291 A.2d 240 (1971); *E. M. Loew's Enterprises, Inc.* v. *Surabian,* 146 Conn. 608, 612, 153 A.2d 463 (1959)." (Internal quotation marks omitted.) *Walton* v. *New Hartford,* 223 Conn. 155, 169, 612 A.2d 1153 (1992).

In support of their motion to open and to modify the judgment, the plaintiffs asserted that the trial court's initial order regarding the paving of the front section of the right-of-way would have the unintended affect of imposing expenses of only $1000 on the defendants but up to $9000 on the plaintiffs. This assertion was not contested by the defendants. The trial court confirmed that it did not intend that result, and modified its order to require the defendants to maintain the front section of the right-of-way by installing gravel or a reasonable substitute. Because it is clear from the record that the court's initial order was based on a misunderstanding regarding the costs of paving the right-of-way and would have the unintended consequence of imposing large costs on the plaintiffs, we conclude that the trial court's decision to open and modify the judgment was a proper exercise of its discretion.

The judgment is affirmed.

In this opinion the other justices concurred.