[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs, Lewis and George Ives, sue the defendant, William Knight, d/b/a Knight's Service Station, seeking monetary damages and injunctive relief stemming from purported interference with the plaintiffs' easement rights. A trial to the court occurred on October 26, 1999, and the court finds the following facts.
On March 16, 1984, the plaintiffs acquired, through warranty deeds, a parcel of land located on the east side of Fitch Street in Willimantic, Connecticut. Fitch Street is and has been a private right of way running generally south from and perpendicular to Main Street in Willimantic. Fitch Street was originally proposed as a city street, but the City of Willimantic never accepted it as such. The warranty deeds conveyed the parcel to the plaintiffs "together with a right of way in common with others over and upon said proposed street. . . ."
From the evidence adduced at trial, this right of way was proposed in 1915 as part of a planned subdivision of land owned by W.F. Warner, which plan contained nineteen building lots, sixteen of which were to front oh the right of way now known as Fitch Street. The plan never came to fruition, however. The right of way is forty feet wide, although the paved portion is only twenty-nine feet wide. The remainder of Fitch Street is a grassy strip or shoulder being the easterly portion of the right of way from the sidewalk at Main Street to the entrance to the plaintiffs' property. The strip is around eleven feet wide and 150 feet long and abuts the defendant's property on the west.
The defendant currently claims no interest in or right to use Fitch Street. Formerly, the defendant had believed the grass shoulder to be part of his land, but, in 1988, he had a survey made in conjunction with the replacement of old, underground, gasoline storage tanks and the construction of a retaining wall. The survey disclosed that Fitch Street included the grassy strip. CT Page 15473 The retaining wall was built along the defendant's actual property line, although the subterranean footings for that wall extend a couple of feet into the right of way.
In 1990 or 1991, the defendant began to keep an eight foot by forty foot box trailer on the grass shoulder. He later kept a second trailer behind the first, but removed the second trailer at the plaintiffs' request so as to facilitate vehicles entering or exiting the plaintiffs' property which abuts the defendant's land on the south.
The plaintiffs lease this property to a plastic box manufacturer. The parcel contains a building which has always been used for commercial purposes.
In 1998, the plaintiffs desired to connect this property to the municipal sewer system. The main sewer line runs beneath Main Street. The plaintiffs hired a contractor to excavate and install a sewer line from this property, underneath the grassy shoulder, to the Main Street trunk line.
The plaintiffs asked the defendant to remove the trailer during this process. The defendant agreed to do so but only if the plaintiffs consented to assume responsibility for any damage to his property or others caused by the installation. The defendant had his attorney prepare a document to that effect, but, after some negotiations, the plaintiffs declined to sign the document. As a result, the defendant refused to remove his trailer.
This refusal necessitated that the sewer line be installed beneath the paved portion of Fitch Street instead of beneath the grass shoulder. The added expense because of this change was $2,780.10.
Sometime later, the defendant removed the trailer, and it is not on the strip currently.
 I
In the first count of the revised complaint, the plaintiffs allege that the right of way granted to them by warranty deeds entitles them to excavate and install an underground sewer line to hook up to the municipal sewer system and that the defendant's refusal to remove his trailer from the grass shoulder interfered CT Page 15474 with that entitlement. They claim monetary damages for the extra expense caused by the necessary installing of the sewer line underneath the paved section of the right of way. The plaintiffs make no claim that the defendant's trailer obstructed their use of the right of way for travel purposes. The plaintiffs conceded at oral argument that their sole claim for damages arises from the reconfiguration of the sewer line route.
Because the plaintiffs claim benefit of the right of way, they have the burden to prove the existence of and extent of the right of way asserted, Somers v. LeVasseur, 230 Conn. 560, 567
(1994). A right of way is an easement which is a limited, nonpossessory interest in the land of another, 4 Powell on Real Property, preface to Chapter 34. The "extent" of an easement includes not only duration but constituency, Id., § 34.12 [1]. For example, the right of way granted to an electric utility company to string electric wire and erect poles is confined to use of that space necessary for the equipment and to gain access thereto and does not entitle the company to use the surface of the land for any other purpose, such as the construction of a fence, Hartford Electric Light Co. v. Wethersfield,165 Conn. 211, 221 (1973)
The most significant factor in determining the extent of an easement is its manner of creation, i.e. by instrument, necessity, or prescription, 4 Powell on Real Property § 34.12[1]. In the present case, the plaintiffs specifically pleaded, in paragraph seven of the first count, that their right to use Fitch Street to connect with the municipal sewer system derives from the grant contained in their warranty deeds. No allegations as to any other source of entitlement to the right of way are set forth. Therefore, the court must decide whether those documents convey to the plaintiffs the right to excavate and install a sewer line underneath Fitch Street and cannot consider any other theory of liability, O'Brien v. Coburn, 39 Conn. App. 143, 147
(1995).
Where an easement is created by deed of conveyance, the extent of the easement depends on the intent of the grantor as expressed by the language employed in the deed, 4 Powell on Real Property § 34.12[2]. Again, in this case, the relevant language is "a right of way in common with others over and upon said proposed street."
There is a split of authority nationwide as to whether a CT Page 15475 general grant of a right of way permits the running of utility lines along or under the land within the right of way or it limits usage to travel and necessary repairs to facilitate travel. In Krause v. Taylor, 343 A.2d 767 (N.J. App. Div. 1975), the New Jersey appeals court held that entitlement to use a right of way does not include the right to run utilities along the right of way, Id., 770. In Ward v. McGlory, 265 N.E.2d 78 (Mass. 1970), and Nantucket Conservation Foundation v. RussellManagement, Inc., 316 N.E.2d 625 (Mass.App.Ct. 1974), Massachusetts courts arrived at the same conclusion. However, inDowgiel v. Reid, 59 A.2d 115 (Pa. 1948), the Pennsylvania Supreme Court reached the opposite conclusion, as did courts in Hawaii,Fleming v. Kai, 430 P.2d 316, 318 (Haw. 1967); and Missouri,Kelly v. Schmelz, 439 S.W.2d 211, 214 (Mo. Ct. of App. 1969)
Other courts have decided this issue on the basis of the presence or absence of specific language in the conveyance that the right of way may be used for any or all purposes. Where the phrase "for all purposes" was employed, the grant was found to embrace the installation of utilities, Ware v. Public Service Co.of New Hampshire, 412 A.2d 84, 86 (Me. 1980); and Davis v.Jefferson County Telephone Co., 95 S.E. 1042, 1043 (W.Va. 1918). Similar language is absent in the present case.
In Kuras v. Kope, 205 Conn. 332 (1985), our Supreme Court confronted a similar issue and ruled that there is no legal authority permitting the installation of subterranean utility lines by virtue of a prescriptive right of way for access, Id., 349. The dominant tenant had argued that the extent of the right of way ought to evolve over time to accommodate normal advancements in the use of a residence. The Supreme Court rejected this argument concluding that such new developments must still be consistent with the circumstances which gave rise to the easement originally, Id., 350. The court pointed out that in that case there was no evidence concerning utilities that might have been available or unavailable at the time the easement was acquired, Id., 351. The court was careful, however, to warn that a different set of circumstances might yield a different result, Id.
Since Kuras v. Kope, supra, was decided, a few trial courts have tackled this issue with, again, a division of opinion on the matter. In Cushing v. Stanish, Superior Court, judicial district of New Haven, Docket No. CV93-348642 (January 24, 1995), Judge Burns held that a "right of way is a right of passage," and no CT Page 15476 right to install utilities is created thereby. In Stott v.Dvorak, Superior Court, judicial district of New London, Docket No. CV92-101097 (April 6, 1994), Judge Leuba ruled that a right of way conveyed by deed created an easement to run utility lines by implication. In Miskin v. Wroblewski, Superior Court, judicial district of Hartford, Docket No. CV96-561277 (September 26, 1997), J.T.R. Allen concluded that the phrase "subject to a . . . right of way" included the right to install utility connectors.
In reaching their conclusions, some of the courts which have implied a right to install utilities from the existence of a right of way have reasoned that utility connections are merely an extension of the right to truck commodities such as water, oil, gas, batteries, generators to the dominant property. The court finds this reasoning flawed. Utility connections are not a mere modernization of vehicular or pedestrian traffic. The installation of utility lines is a constant and relatively permanent burden on the land, whereas, the burden of vehicular and foot traffic is temporary and occasional. These are burdens of very different character.
The court concludes that the plaintiffs have failed to meet their burden of demonstrating, by a preponderance of the evidence, that they had the right, by deed, to install an underground sewer line beneath the Fitch Street right of way. The deeds declare that the right of way is to be exercised "over andupon said proposed street," (emphasis added). The prepositions "over" and "upon" imply use of the surface of the land rather than the earth below. As noted above, the grant lacks the presence of "for all purposes" or similar language.
Neither party introduced the deeds or other instruments which preceded the plaintiffs' warranty deeds in their chain of title. It remains unknown whether those predecessors or other abutters of Fitch Street also received similar or different grants as to the use of the right of way. Although the 1915 plan depicts a street which became the right of way in question, it is uncertain whether the plaintiffs were the first to enjoy a specific grant in a deed.
The facts of this case are both similar and dissimilar to the circumstances described in Kuras v. Kope, Supra. In that case, the setting was rural, and the right of way traversed a farm owned by one side to the litigation. The right of way was to provide access to a residence and was acquired by prescription. CT Page 15477
In the present case, the original owner proposed a street and divested himself of the ownership of land on each side of the right of way. The parties own the abutting land on the east, and CLP owns the abutting land on the west side of Fitch Street. Here, the right of way was expressly created by the grantor rather than acquired by usage.
None of these distinctions, however, convince the court that the original grant was intended to permit excavation and installation of sewer lines. As in Kuras v. Kope, Supra, no evidence was presented as to the availability or nonavailability of municipal utility services in Willimantic when the right of way was created. The burden is on the plaintiffs to prove the right claimed, and they have failed to satisfy that burden.
Because they have not established their right to install the sewer line under Fitch Street, they cannot prevail on their claim that the defendant infringed upon that right by refusing to remove his trailer so that installation could proceed as planned underneath the grass shoulder. The court finds for the defendant as to this count.
 II
The second count incorporates the first and adds an allegation of irreparable damages likely to occur because of the defendant's refusal to remove the trailer and the intrusion of the retaining wall footings into the space beneath the grass strip.
As indicated above, the court holds that the plaintiffs have only proven the right to use Fitch Street for traveling upon its surface. The defendant has never obstructed nor interfered with the plaintiffs' ability to utilize the right of way for this purpose. The defendant promptly moved the second trailer when the plaintiffs requested removal. The first trailer is no longer parked on the shoulder and presented no obstacle to the plaintiffs' use of Fitch Street when it was.
The footings are underground and, likewise, create no obstruction for the plaintiffs' use of Fitch Street. Even if the plaintiffs were entitled to use the earth beneath the right or way, the court would deny injunctive relief. An injunction is an equitable remedy. The cost and disruption necessary to remove the CT Page 15478 footings and reconstruct the defendant's retaining wall would appear far greater than the minimal intrusion of projecting two feet, entirely underground, into the ersatz right of way. It would be inequitable to order such removal.
The court finds for the defendant on the second count.
Sferrazza, J.