DOMINIC CACIOPOLI *v.* JEFFREY LEBOWITZ
(AC 32103)

DiPentima, C. J., and Beach and Schaller, Js.

Argued May 26—officially released September 6, 2011

*Frank B. Cochran*, for the appellant (defendant).

*David S. Doyle*, for the appellee (plaintiff).

*Opinion*

BEACH, J. The defendant, Jeffrey Lebowitz, appeals from the judgment of the trial court in favor of the plaintiff, Dominic Caciopoli, finding that the defendant had trespassed on the plaintiff's land and awarding damages. The defendant claims that the court erred by (1) improperly expanding the tort of trespass, (2) denying his motion for judgment, (3) denying his special defenses of waiver and equitable estoppel, (4) finding that the element of intent with respect to the tort of trespass was satisfied and (5) its award of damages. We affirm the judgment of the trial court.

The following facts, as found by the trial court, and procedural history are relevant. "The plaintiff . . . purchased real property located at 490 Three Corners Road in Guilford, Connecticut, in October, 1978. He chose this property because it was isolated and private. The plaintiff's property was surrounded by forest on all sides, except for the area of the lot through which

his driveway passed. In May, 2005, the defendant . . . purchased property located at 480 Three Corners Road, which is adjacent to the property owned by the plaintiff. The property line between the two homes was unmarked. The plaintiff's home is more than 100 yards from the property line between the two lots, and the plaintiff's view of the home located at 480 Three Corners Road was obstructed.

"In August, 2005, the defendant hired Tanner's Tree Service, LLC [(Tanner's Tree Service)], to clear standing dead trees from the wooded area between the two homes. The defendant believed these dead trees were on his property because they were in a grassy area located between the two homes that had been maintained by the previous owners of 480 Three Corners Road. The defendant directed Tanner's Tree Service to remove all dead timber, both standing and on the ground, to remove some small saplings and remove some larger trees to provide more sunlight and enlarge the areas surrounding his house.

"Prior to the commencement of this landscaping work, the defendant failed to determine the actual location of the property line between the two homes. He went to the plaintiff's home to speak with him regarding the property line, but was told to return when the plaintiff was home. He did not consult his warranty deed or documents available at the town hall. The defendant discovered a marker near the plaintiff's mailbox and incorrectly assumed this marked the property line. In actuality, the property line is twenty-five feet from the house. When the plaintiff learned of the removal of the trees, he went to the defendant's home. The defendant understood that the plaintiff was irate and that the plaintiff pointed out the actual property line. The next day, Tanner's Tree Service returned to complete the work on the plaintiff's property. The removal of the

trees and brush left the plaintiff with an unobstructed view of the defendant's house.

"On August 30, 2005, the plaintiff sent the defendant a letter, in which he suggested that the plaintiff and the defendant should jointly choose 'reasonably mature evergreens' and have them planted to recapture some of the lost privacy. In November, 2005, the defendant paid a nursery to plant three white pine trees on the plaintiff's property to obscure his view of the defendant's home. These trees did little to create a sense of isolation and privacy that the plaintiff had prior to the defendant's trespass.

"In the spring of 2007, the plaintiff had the property line marked. On May 30, 2007, the defendant sent the plaintiff a letter in which he admitted he was mistaken in assuming the location of the property line. On November 13, 2007, the defendant sent another letter to the plaintiff. In that letter, the defendant admitted that he had trees removed that were partly on the plaintiff's property. In the fall of 2007, the plaintiff undertook an extensive landscaping project in a failed attempt to restore his lost privacy. During that project, the trees purchased by the defendant were moved closer to the plaintiff's house."

In 2008, the plaintiff commenced an action alleging trespass. The defendant filed an answer with special defenses. The plaintiff later filed an amended complaint adding a count seeking treble damages pursuant to General Statutes § 52-560. Following a trial to the court, the court in its memorandum of decision found that the plaintiff had proven the elements of an intentional trespass action. The court awarded the plaintiff $150,000 for the diminution in the value of his property caused by the defendant's trespass, plus taxable costs. The court declined to award any damages for the value

of timber removed. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant claims that the court erred in that its damage award improperly expanded the tort of trespass. We disagree.

The court awarded the plaintiff compensatory damages in the amount of $150,000 for the diminution in the value of his property caused by the defendant's trespass. The defendant argues that the damage award was improper.[1] He argues that § 52-560 limits the scope of damages recoverable in timber trespass actions, and that diminution in value is not an appropriate measure of damages.

Section 52-560 provides in relevant part: "Any person who cuts, destroys or carries away any trees, timber or shrubbery, standing or lying on the land of another . . . without license of the owner . . . shall pay to the party injured . . . three times the reasonable value of any other tree, timber or shrubbery; but, when the court is satisfied that the defendant was guilty through mistake and believed that the tree, timber or shrubbery was growing on his land, or on the land of the person for whom he cut the tree, timber or shrubbery, it shall render judgment for no more than its reasonable value."

Common law provides at least three remedies for intentional trespass in situations in which trees have been removed. In an action for timber trespass, "[i]t is an appropriate remedy either for the recovery of damages for the mere unlawful entry upon the plaintiff's land; for the recovery of the value of the trees removed, considered separately from the land; or for the recovery

---

[1] To the extent that the defendant contests the court's finding of liability, we conclude that the court's finding of liability finds support in the record. We discuss the element of intent in more detail in part IV of this opinion.

of damages to the land resulting from the special value of the trees as shade or ornamental trees while standing on the land. For a mere unlawful entry upon land nominal damages only would be awarded. If the purpose of the action is only to recover the value of the trees as chattels, after severance from the soil, the rule of damages is the market value of the trees for timber or fuel. For the injury resulting to the land from the destruction of trees which, as a part of the land, have a peculiar value as shade or ornamental trees,[2] a different rule of damages obtains, namely, the reduction in the pecuniary value of the land occasioned by the act complained of." *Eldridge* v. *Gorman*, 77 Conn. 699, 701, 60 A. 643 (1905). "This is the common-law rule. Under the facts as disclosed by this record, the proper measure of damages is either the market value of the tree, once it is severed from the soil, or the diminution in the market value of the plaintiffs' real property caused by the cutting." (Internal quotation marks omitted.) *Canton Village Construction, Inc.* v. *Huntington*, 8 Conn. App. 144, 147, 510 A.2d 1377 (1986). Cases subsequent to *Eldridge* which allowed for damages for diminution in market value, either in principle or in practice,[3]

---

[2] The use of the language "shade or ornamental trees" ought not be considered a limitation on the sorts of fact patterns which may be addressed by the loss of market value of the land. In *Eldridge*, the claim was that some of the trees which were cut had added value to the land because they served the purposes of shade and ornament; the claimed diminution in value in this specific case was for loss of shade and ornament. Although the claim did not succeed because of technical pleading shortcomings, the court recognized that damages resulting from the reduced pecuniary value of the land were "undoubtedly" a legitimate element of damage if properly alleged. *Eldridge* v. *Gorman*, 77 Conn. 699, 701, 60 A. 643 (1905). "The trees might be a highly valuable appendage to the farm, for the purposes of shade or ornament . . . or for other reasons they might have a special value as connected with the farm, altogether independent of, and superior to, their intrinsic value for the purposes of building or fuel." (Internal quotation marks omitted.) Id., 703.

[3] Cases quite frequently mention the theoretical availability of damages for diminution in value but reject the possibility of such damages in the particular case under discussion because of evidentiary lapses.

include *Canton Village Construction, Inc.* v. *Huntington*, supra, 146–48, and *Stanley* v. *Lincoln*, 75 Conn. App. 781, 787, 818 A.2d 783 (2003) ("[t]he proper measure of damages, therefore, is either the market value of the trees, once they are severed from the soil, or the diminution in the market value of the real property caused by the cutting"). Of particular interest is the case of *Palmieri* v. *Cirino*, 90 Conn. App. 841, 880 A.2d 172, cert. denied, 276 Conn. 927, 889 A.2d 817 (2005). In that case, damages were not allowed for the *replacement cost* of arborvitae trees, but this court recognized that damages for the diminution in value of the land may have been available. Id., 850–51.

*Ventres* v. *Goodspeed Airport, LLC*, 275 Conn. 105, 158–61, 881 A.2d 937 (2005), cert. denied, 547 U.S. 1111, 126 S. Ct. 1913, 164 L. Ed. 2d 664 (2006), raises but does not decide the issue of whether § 52-560 preempts common law. In that case, the cross claim plaintiffs alleged that the cross claim defendants intentionally trespassed on property and cut trees. Id., 158. The cross claim plaintiffs sought treble damages pursuant to § 52-560 based on the replacement cost of the cut trees. Id. No evidence was presented as to the value of the trees or the diminution in value of the land. Our Supreme Court questioned a statement in *Stanley* v. *Lincoln*, supra, 75 Conn. App. 788–89, that suggested that the *statute* provided for remedies other than the value of the trees, and clarified that "although damages for the reduction in pecuniary value of the land—determined by the replacement cost of the trees, if appropriate—were available under the common law, the plain language of § 52-560 authorizes treble damages only for the value of the trees as commodities, not for the reduction in the pecuniary value or for the replacement cost of the trees." *Ventres* v. *Goodspeed Airport, LLC*, supra, 160. In a footnote, however, the Supreme Court stated that no party made a common-law claim in that case,

so the court did not need to decide whether § 52-560 preempted the common-law cause of action. Id., 160 n.42.

In the present case, the plaintiff pleaded in his first count intentional trespass pursuant to common law.[4] As noted previously, common law permits the remedy of diminution in value for intentional trespass. *Bristol* v. *Tilcon Minerals, Inc.*, 284 Conn. 55, 90, 931 A.2d 237 (2007). By amplifying the measure of damages for one category of possible damages, § 52-560 does not preempt and thus eliminate other common-law remedies for timber trespass.

The statute does not expressly indicate that it is an exclusive remedy, and a narrow application is given to statutes modifying the common law. See, e.g., *Jones* v. *Mansfield Training School*, 220 Conn. 721, 729, 601 A.2d 507 (1992); *Nolan* v. *Morelli*, 154 Conn. 432, 439 n.2, 226 A.2d 383 (1967). Additionally, the existence of § 52-560 and its predecessors did not deter our courts from authorizing the diminution in value of the affected premises as a measure of damages for intentional trespass.[5] See *Palmieri* v. *Cirino*, supra, 90 Conn. App. 850 (proper measure of damages includes diminution in

---

[4] The plaintiff later added, in an amended complaint, a count for treble damages pursuant to § 52-560. The court rejected this claim.

[5] We do not agree with the defendant's argument that diminution in value is not an appropriate measure of damages because it is speculative and can involve the use of real estate appraisal evidence. Diminution in value long has been used as a measure of damages in tree cutting cases. See *Palmieri* v. *Cirino*, supra, 90 Conn. App. 850. We disagree with any notion that real estate appraisal evidence is per se impermissibly speculative. Such evaluations of the evidence are properly determined by the trial court on a case-by-case basis.

The defendant also argues that the court erred in that it "converted" a trespass case into a personal injury action that compensated the plaintiff for an "emotional injury" of a loss of his sense of isolation or loss of privacy. The court treated the case consistently as one involving trespass and awarded compensatory damages for objective loss of value. As stated previously, diminution in value is a proper measure of damages in a trespass case.

market value of real property caused by cutting of trees); *Stanley* v. *Lincoln*, supra, 75 Conn. App. 785 (same); *Canton Village Construction, Inc.* v. *Huntington*, supra, 8 Conn. App. 146–47 (same). Section 52-560 does not preempt the field, but provides enhancement of common-law damages by providing for treble damages in certain circumstances. Accordingly, the court did not err in using diminution in the premises' market value as a measure of damages.

## II

The defendant next claims that the court erred in denying his motion for judgment with respect to his special defense of the statute of limitations set forth in General Statutes § 52-584. We disagree.

In his complaint, the plaintiff alleged the intentional tort of trespass. In his answer the defendant pleaded, inter alia, the special defense of the statute of limitations and claimed that the action was not brought within two years as required by § 52-584. At trial, the defendant filed a motion for judgment seeking, inter alia, judgment on his special defenses. The court denied the defendant's motion for judgment. The court reasoned that the plaintiff's action was grounded in trespass and that General Statutes § 52-577 applied, rather than § 52-584. The court concluded that the plaintiff brought his action within the three year time frame provided in § 52-577.

"The question of whether a claim is barred by the statute of limitations is a question of law over which we exercise plenary review." *Sinotte* v. *Waterbury*, 121 Conn. App. 420, 431, 995 A.2d 131, cert. denied, 297 Conn. 921, 996 A.2d 1192 (2010). Section 52-584 provides in relevant part: "No action to recover damages for injury to the person, or to real or personal property, caused by negligence or by reckless or wanton misconduct . . . shall be brought but within two years from the date when the injury is first sustained or discovered

. . . ." This statute, which provides a two year statute of limitations on negligence actions, does not apply in the present case. In his complaint, the plaintiff alleged trespass, an intentional tort, rather than a cause of action grounded in negligence. "The essentials of an action for trespass are: (1) ownership or possessory interest in land by the plaintiff; (2) invasion, intrusion or entry by the defendant affecting the plaintiff's exclusive possessory interest; (3) done *intentionally*; and (4) causing direct injury." (Emphasis added; internal quotation marks omitted.) *Bristol* v. *Tilcon Minerals, Inc.,* supra, 284 Conn. 87. Because § 52-584 did not bar the plaintiff's action, the court did not err in denying the defendant's motion for judgment regarding his special defense based on § 52-584.

### III

The defendant next claims that the court erred in denying his special defenses of waiver and equitable estoppel. We disagree.

In connection with these two special defenses, the court found the following facts. On August 30, 2005, the plaintiff sent a letter to the defendant suggesting, as a resolution, that the parties jointly choose " 'reasonably mature evergreens' " and have them planted to restore the plaintiff's lost sense of privacy. In response to that letter, the defendant, in November, 2005, paid a nursery to plant three evergreen trees on the plaintiff's property, without the plaintiff's input or consent.

### A

We first turn to the defendant's special defense of waiver. The defendant argues that the plaintiff waived any right to bring suit regarding any trespass because the defendant planted trees in response to the plaintiff's August, 2005 letter suggesting that resolution and the plaintiff accepted the trees. Citing *Palmieri* v. *Cirino,*

supra, 90 Conn. App. 850, he argues that the plaintiff was precluded from seeking the cost of replacement trees, yet obtained replacement trees through this resolution.

The court denied the defendant's special defense of waiver, reasoning that the facts did not support his allegation that the plaintiff waived his right to initiate civil suit against the defendant. The court concluded that in accepting the three trees, the plaintiff was not precluded from asserting a claim under the common-law tort of trespass.

"Waiver involves an intentional relinquishment of a known right. . . . There cannot be a finding of waiver unless the party has both knowledge of the existence of the right and intention to relinquish it. . . . Waiver may be inferred from the circumstances if it is reasonable so to do. . . . Whether conduct constitutes a waiver is a question of fact . . . [and is] dependent on all of the surrounding circumstances and the testimony of the parties. . . . Our review of the trial court's determination [therefore] is guided by the principle that, because waiver [is a question] of fact . . . we will not disturb the trial court's [finding] unless [it is] clearly erroneous." (Citation omitted; internal quotation marks omitted.) *Esposito* v. *DiGennaro,* 120 Conn. App. 627, 630–31, 992 A.2d 1230 (2010).

The court did not err in finding that the defendant did not meet his burden of proving his special defense of waiver. The plaintiff suggested, via letter, that the parties "resolve this matter amicably" by jointly choosing evergreens to be planted in the plaintiff's yard at the defendant's expense. The defendant, without input from the plaintiff, chose the number of trees and their location. On these facts, the court did not err in finding that there had been no agreement as to the appropriate planting, and no "waiver" of the action.

## B

The defendant also argues that the court erred in denying his special defense of equitable estoppel. We disagree.

"The doctrine of equitable estoppel is well established. [W]here one, by his words or actions, intentionally causes another to believe in the existence of a certain state of things, and thereby induces him to act on that belief, so as injuriously to affect his previous position, he is [precluded] from averring a different state of things as existing at the time. . . . The party claiming estoppel . . . has the burden of proof. . . . Whether that burden has been met is a question of fact that will not be overturned unless it is clearly erroneous. . . . Accordingly, we will reverse the trial court's legal conclusions regarding estoppel only if they involve an erroneous application of the law." (Citation omitted; internal quotation marks omitted.) *Harley* v. *Indian Spring Land Co.*, 123 Conn. App. 800, 826–27, 3 A.3d 992 (2010).

The court concluded that the defendant did not provide evidence sufficient for it to find that the plaintiff's claim was barred by the doctrine of equitable estoppel. The court reasoned that the defendant acted on his own in purchasing the trees and the plaintiff had no input regarding the number, type or placement of the trees purchased. The court's conclusion that the defendant did not meet his burden of proving his special defense of equitable estoppel was not clearly erroneous. The defendant cannot prevail on this argument.

## IV

The defendant next claims that the court erred in finding that the element of intent with respect to the tort of trespass was satisfied. We disagree.

We review the court's factual findings pursuant to the clearly erroneous standard; to the extent that we review conclusions of law drawn by the court, our review is plenary. *Bristol* v. *Tilcon Minerals, Inc.*, supra, 284 Conn. 87. With respect to trespass, the court found the following. "Evidence submitted by the plaintiff regarding the location of the property line is sufficient for this court to conclude that the plaintiff was the owner of the land in question. The evidence also supports the plaintiff's allegation that the defendant, individually and through Tanner's Tree Service, entered onto the plaintiff's property. The court notes that the defendant acknowledged his mistake regarding the location of the property and that the trees removed from the property in question were 'partly' on the plaintiff's property in his letters to the plaintiff, dated May 30, 2007, and November 13, 2007, respectively. Furthermore, the court finds that the evidence supports the plaintiff's allegation that the acts of the defendant were done intentionally. The defendant hired Tanner's Tree Service to enter the plaintiff's property to remove trees and brush. Moreover, the defendant did not direct Tanner's Tree Service to stop its entry upon the plaintiff's property even after the plaintiff informed the defendant that trees had been removed from the plaintiff's property and pointed out the property line to the defendant. Finally, the plaintiff has proven that he has been injured directly as a result of the defendant's actions because he no longer enjoys a sense of isolation and privacy, which has caused a diminution in value of his house. Therefore, the plaintiff has met his burden of proving the elements of a trespass action . . . ."

The defendant takes issue with the court's findings as to the element of intent. He argues that he could not have known the exact location of the property line at the time the tree removal was in progress. The defendant contends that after the first day of tree removal the

plaintiff screamed at him regarding the tree removal, but was too angry reasonably to specify the location of the property lines. He further states that although the evidence showed that the defendant wrote a letter to the plaintiff acknowledging that the properties had been surveyed and marked and that some of the trees that had been removed were on the plaintiff's property, the letter was written and the survey conducted in 2007, two years after the tree removal. The defendant argues that, as a result, the letter could not be used to show that he knew the location of the property lines at the time the trees were removed. He also argues that the defendant had no intention to injure the plaintiff. Any trespass, he argues, was negligent rather than intentional.

"The essentials of an action for trespass are: (1) ownership or possessory interest in land by the plaintiff; (2) invasion, intrusion or entry by the defendant affecting the plaintiff's exclusive possessory interest; (3) done intentionally; and (4) causing direct injury. . . . [I]n order to be liable for trespass, one must intentionally cause some substance or thing to enter upon another's land." (Citations omitted; internal quotation marks omitted.) *Bristol* v. *Tilcon Minerals, Inc.*, supra, 284 Conn. 87–88. The intent required is the intent to enter the land in question, and, in this action, to cut the trees, regardless of the defendant's subjective belief as to the ownership of the land. See, e.g., General Statutes § 52-560 (defendant who cuts trees mistakenly believing they are on his land still liable for damages for trees he cut); *Plumb* v. *Griffin*, 74 Conn. 132, 135, 50 A. 1 (1901) (same); 75 Am. Jur. 2d, Trespass § 21 (2007).

The undisputed evidence demonstrates that the defendant entered the plaintiff's land. It does not matter, for purposes of liability, whether the defendant knew at the time of the incident the location of the property lines or whether the defendant intended to injure the

plaintiff. There is evidence from which the court could have determined that the defendant intended Tanner's Tree Service to remove trees which were located on the plaintiff's land. Accordingly, the court's finding as to intent is not clearly erroneous and does not involve a mistaken application of the law.

V

The defendant finally claims that the court erred in its award of damages. We disagree.

With respect to its award, the court stated: "As of May 15, 2005, the estimated market value of the plaintiff's property was $675,000, according to an appraisal performed by a certified general real estate appraiser. The appraiser opined that prior to May 15, 2005, the market value of the plaintiff's property was $825,000. The court finds the appraisal and the appraiser's testimony to be credible and objective. Moreover, the defendant had the opportunity to present testimony of a qualified real estate appraiser to contradict the plaintiff's estimates of the fair market value of his property, but failed to do so. Thus, the court accepts the plaintiff's measure of compensatory damages in the amount of $150,000 based upon the diminution in value of the plaintiff's property as a result of the defendant's actions."[6]

A

The defendant argues that the court erred in finding that Seana C. Bedard, a real estate appraiser and witness for the plaintiff, was qualified to testify as an expert. We are not persuaded.

Section 7-2 of the Connecticut Code of Evidence incorporates the test for determining the admissibility

---

[6] Seana C. Bedard, a real estate appraiser, testified that she estimated the date of May 15, 2005, in her appraisal report, but that her analysis would not be affected if the cutting of trees occurred at some later point during the summer of 2005.

of scientific evidence set forth in *State* v. *Porter*, 241 Conn. 57, 698 A.2d 739 (1997), cert. denied, 523 U.S. 1058, 118 S. Ct. 1384, 140 L. Ed. 2d 645 (1998). Section 7-2 of the Connecticut Code of Evidence provides: "A witness qualified as an expert by knowledge, skill, experience, training, education or otherwise may testify in the form of an opinion or otherwise concerning scientific, technical or other specialized knowledge, if the testimony will assist the trier of fact in understanding the evidence or in determining a fact in issue."

"The trial court has wide discretion in ruling on the qualification of expert witnesses and the admissibility of their opinions. . . . The court's decision is not to be disturbed unless [its] discretion has been abused, or the error is clear and involves a misconception of the law." (Internal quotation marks omitted.) *Hutchinson* v. *Andover*, 49 Conn. App. 781, 788, 715 A.2d 831 (1998).

The defendant argues that Bedard was not qualified to give an opinion as to the effect of the removal of certain trees from the plaintiff's property on its market value. He argues that Bedard had no relevant experience or knowledge and that the court erred in finding that she was qualified to testify as an expert simply because she has a real estate appraiser's license.

In ruling that Bedard was qualified to testify as an expert, the court took into account her training and experience. The court reasoned that Bedard was qualified to testify as to the market value of the property because she was "an appraiser and [has] done 1500 appraisals." The court asked Bedard if she was able to testify as to the value of the property before and after the removal of the trees, to which question Bedard responded affirmatively. Bedard further testified that she was licensed to appraise commercial and residential real estate in Connecticut and worked for Miller

Appraisal. She testified that she had conducted approximately 1500 residential real estate appraisals, approximately 300 of those within New Haven County in the five years prior to her testimony. We conclude that the court did not abuse its broad discretion in admitting Bedard's testimony.

The defendant also argues that Bedard was not qualified as an expert because she had not met certain requirements specified in General Statutes § 20-504, which provides that the commissioner of consumer protection may adopt reasonable regulations which "shall require any real estate appraiser to *comply with generally accepted standards of professional appraisal practice* as described in the Uniform Standards of Professional Appraisal Practice issued by the Appraisal Standards Board of the Appraisal Foundation . . . ." (Emphasis added.)

Section 20-504 provides for the regulation of real estate appraisers. The defendant points to no authority which suggests that a real estate appraiser must satisfy the Uniform Standards of Professional Appraisal Practice in a certain manner before a court can admit the appraiser's expert testimony. The court has wide discretion in admitting expert testimony. See *Taylor* v. *King*, 121 Conn. App. 105, 120, 994 A.2d 330 (2010) (witness qualified to testify to diminution in value of property despite not being licensed as real estate appraiser pursuant to General Statutes § 20-501). For the reasons set forth previously, we cannot say that the court abused its discretion in admitting Bedard's expert testimony.

### B

The defendant next argues that there was not a proper foundation for Bedard's appraisal of the value of the plaintiff's property before and after the tree removal. We disagree.

Section 7-4 (a) and (b) of the Connecticut Code of Evidence provide in relevant part: "An expert may testify in the form of an opinion and give reasons therefor, provided sufficient facts are shown as the foundation for the expert's opinion. . . . The facts in the particular case upon which an expert bases an opinion may be those perceived by or made known to the expert at or before the proceeding. The facts need not be admissible in evidence if of a type customarily relied on by experts in the particular field in forming opinions on the subject. . . ."

"Our standard of review for evidentiary matters allows the trial court great leeway in deciding the admissibility of evidence. The trial court has wide discretion in its rulings on evidence and its rulings will be reversed only if the court has abused its discretion or an injustice appears to have been done. . . . The exercise of such discretion is not to be disturbed unless it has been abused or the error is clear and involves a misconception of the law." (Internal quotation marks omitted.) *Bunting* v. *Bunting*, 60 Conn. App. 665, 670, 760 A.2d 989 (2000).

The defendant argues that the court made no finding as to whether there was an adequate factual foundation for a "retrospective appraisal," and that the plaintiff did not ask the court to find that there was an adequate foundation for allowing the opinion evidence. It was, however, the defendant's burden to object to the testimony on these grounds if he desired a ruling during trial. The defendant, however, following trial and prior to the court's issuance of its decision, filed a motion to strike, inter alia, Bedard's opinion evidence on the ground that she had no basis for her opinion.[7] The court denied the motion.

---

[7] The defendant's motion to strike preserves the issue for appeal. See *State* v. *Smith*, 275 Conn. 205, 224 n.10, 881 A.2d 160 (2005).

The defendant argues that there is not an adequate foundation for Bedard's appraisal because she did not personally observe the plaintiff's property prior to the tree removal, but rather relied on the plaintiff's hearsay descriptions of the property. He contends that Bedard did not visit the property until the winter of 2009, after the plaintiff had altered the site and at a time when the deciduous trees were without leaves.

Bedard testified that she personally visited the plaintiff's property in January, 2009, and again in February, 2009. She further testified that she determined the lot enjoyed a high degree of privacy prior to the incident; her conclusion was based on her personally viewing the property in 2009 and on conversations with the plaintiff in which he described the condition of the lot prior to the incident. She also stated that the plaintiff showed her photographs of the lot, which had been taken at some time in the past, but that she did not remember seeing dates on the photographs. After she completed her appraisal, she saw pictures of the lot following the incident and testified that the pictures depicted more clearing of trees than she had imagined and thus, strengthened her opinion as to diminution in value.

The defendant points to no authority to suggest that Bedard's personal observation of the property, her reliance on the plaintiff's descriptions of the prior conditions of the property and photographs of the property in its prior conditions formed an inadequate factual foundation. The defendant relies on *Porter* v. *Thrane*, 98 Conn. App. 336, 908 A.2d 1137 (2006), which is inapposite. In *Porter*, we determined that an appraiser's testimony as to value was speculative because the appraiser had not inspected the property, never viewed the house or property and was unfamiliar with the interior of the house. Id., 340–41. In this case, Bedard personally observed the property, albeit a few years after

the incident, and was informed by the owner of its conditions at prior relevant times. Bedard also viewed photographs of the property. She testified that one such photograph, apparently depicting the property shortly after the incident, which she viewed after her appraisal, bolstered her opinion as to value. Bedard's personal observation of the property complemented by the plaintiff's descriptions of the property in its prior conditions, is not impermissibly speculative as determined in *Porter*. Furthermore, any reliance by Bedard on the plaintiff's description of his property does not render the report incompetent, as the defendant so argues. The plaintiff, as the owner, was familiar with his property. *Somers* v. *LeVasseur*, 230 Conn. 560, 566 n.2, 645 A.2d 993 (1994); see also *State* v. *Wilson*, 188 Conn. 715, 722–23, 453 A.2d 765 (1982) (jeweler permitted to testify as to valuation based solely on written inventory prepared by owners); *Watson* v. *Watson*, 20 Conn. App. 551, 560, 568 A.2d 1044 (1990) (owner of property qualified to render opinion on value of his land including diminished value), rev'd in part on other grounds, 221 Conn. 698, 607 A.2d 383 (1992).

Any argument by the defendant that Bedard's opinion was based on inadmissible evidence is unavailing. Section 7-4 (b) of the Connecticut Code of Evidence states that experts may base opinions on facts made known to the expert prior to the proceeding and that those facts need not be admissible evidence.

The defendant also argues that Bedard's opinion "was of no use to the trial court and should have been stricken as incompetent" because, he claims, she could not give a logical explanation for how she arrived at her opinion and did not articulate or apply methodology suitable to determining any diminution in value caused by the clearing of trees. Bedard testified that she examined

real estate in the Guilford area, found comparable properties, estimated degrees of privacy and made adjustments, positive or negative, for the differences in the properties in order to "equal everything out." She also noted that an appraisal is not based on science, but it is an opinion as to value.

Based on the foregoing, we cannot say that the court abused its discretion by admitting her testimony.

C

The defendant also argues that Bedard's appraisal report contained numerous errors, such as incorrect dates, the inclusion of properties as "comparable" that should have been excluded and violations of certain standards of professional appraisal practice.

These arguments affect the weight, rather than the admissibility of the evidence. The court, as the trier of fact, was free to determine the weight to be afforded to that evidence. "It is well established that [i]n a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . The credibility and the weight of expert testimony is judged by the same standard, and the trial court is privileged to adopt whatever testimony [it] reasonably believes to be credible. . . . On appeal, we do not retry the facts or pass on the credibility of witnesses." (Internal quotation marks omitted.) *In re Rafael S.*, 125 Conn. App. 605, 611–12, 9 A.3d 417 (2010).

The judgment is affirmed.

In this opinion the other judges concurred.